Lewis Dufauchard, Plaintiff-Appellee, v. Daniel P. Ward, State's Attorney, Roswell Spencer, State's Attorney's Police, Curtis Foster, State's Attorney's Policeman, Defendants-Appellants.

**Gen. No. 49,392.**

First District, Fourth Division.

July 29, 1964.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Edward J. Hladis, Chief of Civil Division, Earl Arkiss and Ronald Butler, Assistant State's Attorneys, of counsel), for appellants.

Raymond W. Ewell & Carl McCormick, of Chicago (Carl McCormick, of counsel), for appellee.

MR. PRESIDING JUSTICE ENGLISH delivered the opinion of the court.

The defendant State's Attorney and two policemen appeal from a judgment ordering the return to plaintiff of $844.00 seized in connection with his arrest on charges of bookmaking. Plaintiff was acquitted of the gambling charges and subsequently filed this action in detinue for return of the money.

Defendants advance two arguments: (1) plaintiff, as bailee, lacks the requisite general or special property interest to maintain detinue, and (2) the order is erroneous as inconsistent with the testimony taken before the trial court.

The record shows that on August 29, 1963, plaintiff was arrested in the back room of a cleaning establishment in Chicago on a charge of bookmaking, and the sum of $844.00 taken from his pocket. The arrest occurred as a result of a police surveillance of an individual who had been observed conducting a "walk-

ing bookmaking" operation in the area. During close pursuit of this person he was seen to enter the cleaning store, and the officers followed. There they came upon plaintiff seated at a desk with gambling paraphernalia consisting of notebooks and scratch sheets, with markings denoting what horses were being bet on that day.

The plaintiff was the sole witness on his own behalf. After first testifying that he had no business or connection with the betting establishment, he then admitted that he "was a race horse bookie in there"; that he had worked there for two weeks; that his "job was to take the bets as they came in," including bets made by telephone; and that part of his job was to pay out bets on horses that won. He admitted further that he was in the process of taking a bet from a man when the police came in and arrested him; and that the money in his hand, of an unspecified amount, was part of the betting. Plaintiff insisted, however, that the $844 in his pocket was not used in the gambling operation but "was money that just came to me from my sister."

The abstract shows plaintiff's attempted explanation of his possession of this money as follows:

> . . . There was a rubber band on it. No, sir, it wasn't used for betting, it just came, a man that was out at the steel mill—he had it about 4, 5 days, my sister had it, and she wanted me to keep it because she had to lay off to go to a bank to get the money. She said, "You keep it for me, and then when I need it to . . ." to put on a home that she was going to buy, that she wanted to see Cleveland Longmire, he was the one that took care of her business for her, she told me to see him and keep this money, so I had it in my pocket, a man just brought it to me at about 4:10 p. m.

44

and they came in there about 4:15 p. m. and found the money in my pocket and unbuttoned my pocket and took it.

. . . . . .

No, sir, none of the money that I had inside my pocket, the money in question here in this detinue action, was for gambling. I just got it, I had it at home, but my landlady goes to work at Campbell Soup, she has got to be there at three o'clock, and the young man that brought me the money, he has got to leave and get there at 4:30, in the steel mill, he works in the evening and there is nobody home. So I said "I better take this money with me because it might be stolen," nobody at home and we are upstairs I said, "somebody might break in there and try to steal it." So I called up and he was there and I said "Bring me that money out of the drawer," and he brought it. That's the only reason I had it in my pocket. I was afraid somebody would steal it if it was left home with nobody there. The man who brought me the money is named Boss.

Plaintiff lived at 7939 South Evans; his sister at 217 East Marquette. The record does not disclose where Mr. Boss lived. Mr. Boss did not testify. Neither did plaintiff's sister.

█ We do not agree with the State's first contention, that plaintiff, as a mere bailee, lacked a general or special property right sufficient to maintain this action, and we believe that the authorities it cites do not require us to support such a proposition (Martin v. Cole, 331 Ill App 597, 73 NE2d 633; 26A CJS Detinue § 1; Story, Bailments § 93; Commonwealth v. Morse, 14 Mass 217). For the opposite conclusion see, rather, the cases cited in 8 CJS Bailments § 56(1) and especially in § 56(1)b(b). Also Schouler, Bailments

§ 54 (1887); Blackstone, 2 Commentaries 396, 452 (1857); and very recently, Ebel v. Collins, 47 Ill App 2d 327, 332, 198 NE2d 552. We subscribe to the statement found in 8 Am Jur2d, Bailments § 286:

> The authorities are now apparently agreed that a bailee in possession of the subject matter of the bailment, even though he is only a borrower or a mere gratuitous bailee, may bring any appropriate action against third persons who wrongfully injure, destroy, cause the loss of, or convert the property. Thus, where it is an appropriate remedy for the wrong suffered, the bailee may generally maintain against such persons an action in trespass, trover, trespass on the case, replevin, or detinue.

■ ■ Recognition of plaintiff's claim to an interest which would qualify him to bring this action does not, however, answer the second question as to whether the court will recognize plaintiff's interest as a basis for granting the relief sought. The State's answer and evidence have raised the issue of contraband, and, as stated in People v. Moore, 410 Ill 241, 247, 102 NE2d 146 (1951): "If property is actually contraband no one can assert a legal ownership or right to possession that will be respected by any court." Money and other property not intrinsically contraband may become so and thus be subject to confiscation, if found to be an integral part of a gambling operation. People v. Moore, 410 Ill 241, 250, 102 NE2d 146; People v. Fratto, 32 Ill App2d 354, 357, 177 NE2d 864; People v. Wrest, 345 Ill App 186, 195, 103 NE2d 171.

■ ■ Since this action is civil rather than criminal in nature, the quantum of proof required is only a preponderance of the evidence. People v. Moore, 410 Ill 241, 249, 102 NE2d 146 (1951). From a consideration of the record, we believe the only reasonable conclusion of both fact and law is that the money taken

from plaintiff was an integral part of the gambling operation. Plaintiff made an express admission of the fact that part of his job was to pay off winning bets. Cash in the amount of $844 was found on his person and an unspecified amount in his hand which he was just then taking in on a bet. No other money was claimed to have been available on the premises for the purpose of paying off bets. In this situation the character of the funds must be determined also by comparison with plaintiff's fantastic "explanation" of how he had come by the money only five minutes before the police arrived.

Plaintiff seeks to distinguish the facts of this case from those in other contraband cases, claiming a difference in character of the depository where the money was kept in plaintiff's drawers rather than in counter drawers, as in People v. Wrest, 345 Ill App 186, 103 NE2d 171 (1951) or in slot machines, as in Germania Club v. City of Chicago, 332 Ill App 112, 74 NE2d 29 (1947). We believe that variations in the type of receptacle, limited only by the ingenuity of persons notorious for their resourcefulness, do not require the application of any different legal principle, provided only that the money, as in the case at bar, is shown to have been the stake or otherwise an integral part of the gambling operation. Cases from other jurisdictions illustrate the wide variety of storage places from which cash has been seized and held subject to confiscation: State v. Fossett, 50 Del Super 460, 134 A2d 272 (1957) (desk of bookmaker); Commonwealth v. Blythe, 178 Pa Super 575, 115 A2d 906 (1955) (apron of bingo-game operator); Fairmount Engine Co. v. Montgomery County, 135 Pa Super 367, 5 A2d 419 (1939) (safe in basement of engine house in which lottery was operated); Rader v. Simmons, 290 NY 449, 49 NE2d 523, 525 (1943) (pockets of policy "banker"); and Kenny v. Wachenfeld, 14 NJ Misc 322, 184 Atl 737 (1936) (pocket of bookmaker).

Accordingly, we hold that the money was contraband and, in consequence, subject to confiscation. The order of the trial court directing its return to plaintiff, is therefore reversed, with judgment in this court in favor of defendants.

Reversed.

DRUCKER and McCORMICK, JJ., concur.