THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
THEODORE SNYDER, Defendant-Appellee.

Second District   No. 76-148

Opinion filed September 13, 1977.

Gerry L. Dondanville, State's Attorney, of Geneva (Phyllis J. Perko and Robert J. Anderson, both of Illinois State's Attorneys Association, of counsel), for the People.

Roy S. Lasswell, of Batavia, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The State appeals from a judgment which denied its petition for forfeiture and ordered the return of $3,320 in United States currency to the defendant, Theodore Snyder. The money was seized pursuant to a search warrant issued in connection with charges against defendant under the Cannabis Control Act (Ill. Rev. Stat. 1973, ch. 56½, par. 701 *et seq.*). Defendant pled guilty to the offense of unlawful possession of cannabis (35 pounds) with intent to deliver and was sentenced to 6 months of periodic imprisonment and fined $1,000. Thereafter Snyder moved for return of the seized currency. The State then filed its petition to forfeit pursuant to section 12(a)(4) of the Cannabis Control Act (Ill. Rev. Stat. 1973, ch. 56½, par. 712(a)(4)).

Section 12(a)(4) provides as pertinent:

"(a) The following are subject to forfeiture:

❉ ❉ ❉

(4) all money, things of value, books, records, and research products and materials including formulas, microfilm, tapes, and data which are used, or intended for use, in violation of this Act."

Ill. Rev. Stat. 1973, ch. 56½, par. 712(a)(4).

Whether the money seized in Snyder's apartment was "used, or intended for use in violation of this Act," is in issue.

■■ The State first contends, and we agree, that forfeiture proceedings are *in rem* against the items used in the commission of an offense and, generally, they are considered civil in nature, with the result that the State must prove its right to the property by a preponderance of the evidence

rather than beyond a reasonable doubt. (*People v. Moore*, 410 Ill. 241, 248 (1951); *Dufauchard v. Ward*, 51 Ill. App. 2d 42, 46 (1964).) Essentially a factual question is raised. We therefore must defer to the judgment of the trial court unless his ruling is against the manifest weight of the evidence. *People ex rel. Penrod v. Chicago & North Western Ry. Co.*, 17 Ill. 2d 307, 311 (1959).

■■ The parties have not cited nor have we found any precedent bearing directly on the statute before us. Money is, of course, inherently legal and is therefore not an item whose possession alone constitutes a criminal offense and is therefore not contraband unless used in an unlawful manner. (*Cf. People v. Steskal*, 55 Ill. 2d 157, 159 (1973).) Further, where an article is not contraband *per se* its use must have a rational relationship to an unlawful purpose before it is subject to forfeiture. (*Boling v. Division of Narcotic Control*, 24 Ill. 2d 305, 308 (1962).) In gambling cases money is considered contraband when it constitues a "functional integral part" of a gambling operation. See *People v. Moore*, 410 Ill. 241, 250 (1951); *Dufauchard v. Ward*, 51 Ill. App. 2d 42, 47 (1964); *People v. Wrest*, 345 Ill. App. 186, 195 (1951); Annot., 19 A.L.R.2d 1228 (1951).

The State argues and we agree that the same standard should apply to the present fact situation. Defendant, however, argues the gambling cases should be distinguished on the basis that money is a necessary and therefore an integral part of the gambling offense, but is not similarly connected with the offense of possessing or delivering marijuana and therefore is not an integral part of that offense.

We do not find defendant's argument persuasive. Defendant pleaded guilty and was convicted under the provision of the Act which makes it "unlawful for any person knowingly to manufacture, deliver, or possess with intent to deliver, or manufacture, cannabis." (Ill. Rev. Stat. 1975, ch. 56½, par. 705.) The word "deliver" is defined in the statute so as to specifically include sales transactions.

> "(c) 'Deliver' or 'delivery' means the actual, constructive or attempted transfer of possession of cannabis, with or without consideration, whether or not there is an agency relationship." (Ill. Rev. Stat. 1975, ch. 56½, par. 703(c).)

This definition explicitly recognizes that a marijuana delivery may often involve monetary or other consideration passing in exchange for the marijuana. (See, *e.g., People v. Hesler*, 39 Ill. App. 3d 843, 845 (1976); *People v. Bruce*, 36 Ill. App. 3d 524, 525 (1976); *People v. Cooper*, 17 Ill. App. 3d 934, 937 (1974).) Thus money may in particular circumstances be an integral part of the offense of possession of marijuana with intent to deliver.

■■■ We agree with the State's contention that the record makes it

manifestly evident that the $3,320 in cash was an integral part of a marijuana business conducted in defendant's home in violation of the Cannabis Control Act. Investigators not only seized approximately 35 pounds of marijuana valued at approximately $5,250 but also seized items connected with weighing, processing and packaging the marijuana. The possibility that these items had an innocent function was negated by the defendant's own testimony in which he acknowledged his kitchen contained "paraphernalia used in the processing and distributing of marijuana."

The connection between the processing and distributing operation and the money was clearly demonstrated by a record book found in a locked cabinet along with the $3,320 in cash. Defendant not only admitted ownership of the book, but also admitted that it contained an account of marijuana transactions and that he made some of those transactions. The testimony of one of the investigators involved in the search, corroborated by the defendant, indicates that the book records transactions with a variety of persons over a period of several months. For instance the account of an individual named "Baby" shows transactions amounting to $23,510 during the months of October, November and December just prior to the search and defendant's arrest. Other sales during approximately the same time span involved an individual named "Tree" and those transactions amounted to $13,115. The record shows that defendant even continued to make marijuana sales after his arrest. The cash and the marijuana were directly connected by defendant's testimony.

"The Court: And that [$3,320] was dope money wasn't it.
Snyder: Not all of it."

We conclude these facts constitute prima facie evidence that defendant's processing and distributing operation, the marijuana transactions, and the $3,320 in cash were integrally connected. Compare $3,265.28 in United States Currency v. District of Columbia, 249 A.2d 516 (D.C. App. 1969), with Plummer v. Commonwealth, 215 Va. 185, 207 S.E.2d 861 (1974).

Although the record clearly demonstrates that the locked cabinet contained the capital which was used and intended for use in marijuana transactions, it does not conclusively show every dollar was used or intended for use in marijuana transactions. In this respect, defendant testified that the entire amount was "savings" toward establishing a roofing business, and that he was going to put it all in the bank when he had accumulated $5,000. This explanation, of course, is not entirely consistent with his admission that some of the cash was "dope money." Moreover, in light of the information in the record that defendant had a savings account and a checking account at a local bank, it is inherently improbable and incredible that defendant would not keep his "savings" in

one of these personal bank accounts. This court is not required to accept defendant's explanation (*Thomas v. LeBurkian*, 10 Ill. App. 3d 742, 745 (1973)) and the record indicates that the trial judge also considered the explanation incredible.

In the same vein, there is nothing in the record which would indicate defendant's "savings" were in any manner separated or segregated from his "dope money." Just the opposite was true. All the money was together in the cabinet from which he conducted his marijuana transactions and not in his personal bank accounts. Under these facts the burden was on the defendant to produce credible evidence tending to show what portion of the $3,320 was not integrally related to the marijuana transactions. Since the record contains no such evidence, we must conclude that the entire $3,320 was used or intended for use in marijuana transactions. (*Cf. Pratico v. Rhodes*, 17 N.J. 328, 111 A.2d 399, 403 (1955).) The trial court's determination to the contrary was against the manifest weight of the evidence.

We therefore reverse.

Reversed.

RECHENMACHER, P. J., and NASH, J., concur.