THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. 1984 BMW 528E AUTOMOBILE (Armando Villarreal, Intervenor-Appellee).

Second District   No. 2—90—0168

Opinion filed February 19, 1991.

Timothy K. Mahoney, of McNamee & Mahoney, Ltd., of Dundee, for appellant.

Gary V. Johnson, State's Attorney, of Geneva, and Robert J. Huguelet, Jr., of Orland Park (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WOODWARD delivered the opinion of the court:

Intervenor, Armando Tito Villarreal, appeals the judgment of the circuit court ordering certain personal property forfeited under section 12(a)(4) of the Cannabis Control Act (Act) (Ill. Rev. Stat. 1989, ch. 56½, par. 712(a)(4)). The issue on appeal is whether there was a

rational relationship between the items seized and the alleged violation of the Act.

The State commenced these civil proceedings to forfeit certain property. Count I involved one black 1984 BMW 528E four-door automobile owned by Gilbert Rodriguez, who also intervened in this cause but did not file a notice of appeal. Count II involved currency in the amount of $1,812.50 seized from intervenor. Count III involved jewelry seized from the two men. Count IV involved a paging device seized from intervenor. The trial court also determined that a portable telephone was the property of a third person and ordered it returned. All the other items were ordered forfeited.

Intervenor filed a motion in which he sought the return of the following property: one pager; currency in the amount of $1,812.50; one black, man's Citizen watch with 21-jewel automatic movement; a man's 14-carat Geneve quartz watch with nugget bracelet at 88.78 grams; a man's 14-carat, 20.50-millimeter nugget identification bracelet with "TITO" written in 49 diamonds of an average weight of .03 carats, or 1.47 carats total weight, with a frame made of 66 1.5-millimeter garnets; and one 14-carat, 18-inch by 7-millimeter beveled herringbone chain with a box clasp at 41.41 grams. Intervenor also claimed seven men's 14-carat gold rings, which included a nugget ring with the initial "A"; a matching nugget ring with the initial "V"; another matching nugget ring with 35 small jewels of a total weight of 1.40 carats; a nugget ring with a horseshoe and a pear diamond; a rectangular citrine ring; a ring with four clear stones; and another nugget ring. These items were found on his person on May 2, 1989. Intervenor was also found with a nugget ring with a jaguar emblem and a lady's John Anthony 14-carat gold, double-link, black-dial wristwatch with quartz movement, found in intervenor's pocket. These last two items were claimed by other intervenors for whom relief was denied. By stipulation of the parties, an appraisal was admitted into evidence stating that the value of all the jewelry was $20,915. Gilberto Rodriguez also had $4,260 worth of jewelry, including a watch, a 14-carat identification bracelet, a gold ring with "GILBERT" in 66 jewels and two horseshoe-with-horsehead 14-carat gold rings.

During the trial, officers of the Elgin police department testified that on May 2, 1989, at approximately 1 a.m., Gilberto Rodriguez was the driver and intervenor the front seat passenger of the BMW, which was parked at a convenience store in Elgin. Officer Piske saw two men outside the BMW yelling and pointing at it. When he pulled his squad car behind the BMW, it started to back up. The driver turned and saw the squad car, and the passenger turned, saw the squad car,

and made a movement as to place something beneath his seat. Officer Hansen arrived, and the two occupants of the BMW exited the car at the officers' request. Officer Christ found a .380 Llama handgun, loaded with a magazine of seven bullets, under the passenger's seat, and the two occupants were arrested. Officer Hansen found a mobile telephone between the front seats, and she attempted to safeguard it by placing it in the trunk of the BMW, using a key from a key chain found in the car's ignition. In the trunk, she saw a plastic bag containing a green, leafy substance. An evidence technician testified that he tested the substance and determined that it was 464.3 grams of a substance containing cannabis.

When the two occupants were arrested, they put their hands on their paging devices. When examined by the police, the pagers were deactivated. The devices did not beep during the time the occupants were detained at the scene or at the police station.

Over the intervenors' objections, Officer Christ testified that intervenor Villarreal said that he was a landscaper who had been unemployed for 6 to 12 months and that intervenor stated the same fact to the judge conducting a hearing regarding his bond.

A local citizen testified that on April 25, 1989, he sold the BMW to Rodriguez. Rodriguez paid $11,300 in cash: $6,000 in $100 bills, $500 in $50 bills and the balance with $20 bills. On May 2, Rodriguez called him to ask if the title to the car had been returned by the secured-party bank. Rodriguez then told him, "[D]on't answer no questions," if anyone should ask who bought the car.

Lieutenant Copher testified as an expert in narcotics investigations. He had been employed by the Elgin police department for 20 years and had 10 years' experience in narcotic investigations, during which he had participated in over 500 narcotics arrests and had spoken with narcotics dealers and users over 1,000 times. Answering a hypothetical question based on the above facts, Copher stated his opinion was that the two occupants held possession of the cannabis with intent to deliver it. Copher testified that the *modus operandi* of a typical drug dealer included the use of a pager. A dealer will give his pager number to potential customers; the customer dials the telephone number of the pager and transmits his own telephone number to the pager; the dealer reads the pager and calls that number, usually using a portable telephone so as to avoid residential surveillance, to arrange a transaction with the customer; the dealer then uses the car to drive to the customer and deliver the product. Copher had encountered this *modus operandi* 15 to 20 times in the previous year and a half. Copher also testified that drug dealers use large amounts

of cash during their transactions. Drug dealers also need a loaded gun to protect the drugs and money and to protect themselves. Cannabis was selling at approximately $120 per ounce. Copher testified that 465 grams of cannabis was more than normally used for personal use because a single cannabis cigarette contains less than one gram of cannabis.

Copher stated that the value and amount of jewelry on the two occupants did not have any significance in forming his opinion of their intent. However, Copher thought that since the parties were unemployed, the cash and jewelry were obtained through illegal means. Their possession of these items was "consistent with other drug dealers that I have arrested who were not working that had large amounts of money and jewelry."

Following the close of the evidence, the intervenors moved for a directed finding, arguing, *inter alia*, that there was no evidence that the relevant objects were used as part of a violation of the Act. The intervenors did not present any evidence. The court stated that it thought the State had met its burden of proving that most of the property was subject to forfeiture; however, the court remained unconvinced regarding the jewelry and invited the parties to submit memoranda. The State filed a memorandum in which it argued the jewelry was subject to forfeiture under a net-worth theory as explained in the decision in *United States v. Nelson* (7th Cir. 1988), 851 F.2d 976. The intervenors did not respond, and the court entered a judgment finding that all the property, except the telephone which was stipulated to be the property of a third person, was subject to forfeiture; the court included the jewelry in the forfeited items, relying on *Nelson*. Intervenor Villarreal appeals.

On appeal, intervenor contends that there was insufficient evidence to tie him to a violation of the Act which would subject his property to forfeiture. The intervenors were accused of violating section 5(d) of the Act (Ill. Rev. Stat. 1989, ch. 56½, par. 705(d)) for possessing more than 30 grams of a substance containing cannabis with intent to deliver it. Under section 12(a) of the Act, "[t]he following are subject to forfeiture: *** (4) all money, things of value, books, records, and research products and materials including formulas, microfilm, tapes, and data which are used, or intended for use, in violation of this Act." (Ill. Rev. Stat. 1989, ch. 56½, par. 712(a)(4).) Intervenor argues that there was no evidence to relate his property to the cannabis found in the trunk of the car owned by another.

Intervenor argues that he was not in possession of the cannabis and thus cannot have committed a violation of section 5 of the Act,

which prohibits the knowing possession of cannabis with intent to deliver it. Intervenor was neither the driver nor owner of the car, and thus he argues that there was no evidence to show he had knowledge, control, or possession of or access to the cannabis in the trunk. The trial court made an explicit finding that both Rodriguez and intervenor were in possession of the cannabis with intent to deliver it.

■■ Possession may be either actual or constructive, but the terms are not mutually exclusive; they form a continuum based on the relative immediacy of control. (*People v. Gore* (1983), 115 Ill. App. 3d 1054, 1057.) In *Gore*, the driver of a car was determined not to have been guilty beyond a reasonable doubt of knowing possession when a bag of cannabis was found under a passenger's seat, and there were several passengers in the car. Knowledge could not be inferred merely from access shared by others in the area in which the drugs were discovered. (115 Ill. App. 3d at 1058.) To prove possession, there had to be some additional facts showing special or specific knowledge by the defendant. 115 Ill. App. 3d at 1059.

Actual, physical, personal possession is not required, as possession may be constructive. (*People v. Birge* (1985), 137 Ill. App. 3d 781, 790.) The element of knowledge is hardly ever susceptible of direct proof, but may be inferred by evidence of acts, declarations or conduct of the accused from which the inference may be fairly drawn that he knew of the existence of the narcotics at the place where they were found. (*People v. Embry* (1960), 20 Ill. 2d 331, 334.) A defendant's possession may be joint with another. (*Birge*, 137 Ill. App. 3d at 790.) An inference of knowledge may arise if the amount of drugs found is large. 137 Ill. App. 3d at 790.

In this cause, the bag in the trunk of the BMW contained over 463 grams of cannabis, more than a reasonable amount for personal use, and nearly the amount of 578.8 grams found in *People v. Schaefer* (1985), 133 Ill. App. 3d 697, 702, in which the court held that amount exceeded the amount reasonable for personal use. Other evidence found which could be considered evidence of intent to deliver is the presence of drug paraphernalia such as a grinder and scale. (133 Ill. App. 3d at 703.) A third element that is properly viewed as consistent with an intent to deliver is the presence of weapons. (133 Ill. App. 3d at 703.) In this cause, intervenor and Rodriguez were each wearing a pager and sitting next to a mobile telephone, and these items are used to transact the drug trade. Intervenor was seen reaching under his seat, where a loaded handgun was discovered. In this cause, both men were carrying large amounts of cash, which Lieutenant Copher testified was a tool of the illegal drug trade, and no one

offered any other explanation for possession of such large amounts.

Based on these facts, the trial court could determine that the two men acted as a team to deliver cannabis, sharing the duties of steering the car, wielding the gun and answering telephone pages. Thus, a joint and knowing possession of the cannabis could reasonably be inferred. Whether possession is proved is a question for the trier of fact. (*Birge*, 137 Ill. App. 3d at 791.) Since this cause is a civil proceeding, the State had to prove its right of forfeiture by only a preponderance of the evidence. (*People ex rel. Douglas v. One 1984 Toyota Supra Vehicle* (1990), 202 Ill. App. 3d 797, 804; *People v. Snyder* (1977), 52 Ill. App. 3d 612, 613.) The judgment of the trial court will not be reversed unless its ruling is against the manifest weight of the evidence. (52 Ill. App. 3d at 614.) Based on the particular facts of this case, we uphold the trial court's determination that a violation of the Act occurred subjecting property to forfeiture.

The next issue that must be determined is whether the State met its burden of proving that the property was used or was intended for use in violation of the Act. The State contends that intervenor has waived the issue for his failure to raise it in his appellant's brief. (See 134 Ill. 2d R. 341(e)(7).) The State notes that intervenor in his brief argues: "If there was no constructive possession of cannabis by ARMANDO VILLARREAL, there can be no rational relationship of the property taken from VILLARREAL to any unlawful purpose." The State contends that since constructive possession was proved, intervenor's argument must fail, and since he did not otherwise raise the usage issue in the brief, the issue is waived and the judgment must be affirmed. However, based on our reading of the brief, though it may be inartfully written, intervenor did raise the issue indirectly. The intervenor did write that "the plaintiff had the burden to prove that they [*sic*] money was used or intended for use in violation of the Act *** and that the seized property bore a rationale relationship to an unlawful purpose, *i.e.*, the possession with the intent to deliver the cannabis." Thus, while the argument is not developed very well, especially in regard to the individual items, it is not waived.

The items relevant to this appeal are the pager, the $1,812.80 cash and the jewelry. These items are not contraband *per se* and therefore are not contraband unless used in an illegal manner. Their use must bear a rational relationship to an unlawful purpose before they are subject to forfeiture. (*Snyder*, 52 Ill. App. 3d at 614.) The pager did bear a rational relationship to the illegal trade of cannabis because it could be used to arrange the surreptitious sale of the drugs. The trial court explicitly found by a preponderance of the evi-

dence that the two alleged offenders' pagers were used in illegal drug activities. This finding is not manifestly erroneous.

■■ ■ Currency may also be forfeited under the Act. Section 12(a)(4) specifically mentions "money" used or intended for use in violation of the Act. For such "derivative" contraband to be forfeited, the State must show a rational relationship between the property and an unlawful purpose. (52 Ill. App. 3d at 614.) Cash can be the capital used and intended for use in marijuana transactions. (52 Ill. App. 3d at 615.) Cash is used in exchange for cannabis, to make change for customers' large bills and to purchase more inventory. Intervenor has not offered any explanation for holding such a large amount of cash. While the trial court determined that the cash was subject to forfeiture because it was a fruit of the crime, there was sufficient evidence to find that the cash was used, or intended for use, in violation of section 5 of the Act. Thus, the trial court's conclusion was not against the manifest weight of the evidence.

■■■ The forfeitability of the jewelry is a different question because section 12 does not specifically mention jewelry as being subject to forfeiture. The jewelry could only be subject to forfeiture if it was used in violation of the Act. We also note here that section 12 of the Act differs from section 505(a)(5) of the Controlled Substances Act (Ill. Rev. Stat. 1989, ch. 56½, par. 1505(a)(5)), which authorizes the forfeiture of everything of value furnished in exchange for a substance in violation of the Controlled Substances Act and all proceeds traceable to such exchanges. In contrast, section 5 of the Cannabis Control Act authorizes the forfeiture of those items used to violate the Act. The Act does not authorize the forfeiture of receipts and proceeds.

The trial court found that, given the intervenor's net worth based on his status as an unemployed landscaper, he could have only obtained the jewelry by illegal means. Thus, the trial court ruled that the jewelry was subject to forfeiture, citing *United States v. Nelson* (7th Cir. 1988), 851 F.2d 976. The State supports its argument on appeal with *Nelson.*

■■■ We do not believe that *Nelson* supports the State's position. The *Nelson* court discussed forfeiture under sections 848 and 853 of the Federal Comprehensive Forfeiture Act (21 U.S.C.A. §§848, 853 (West Supp. 1990)). The *Nelson* court applied the net-worth theory to determine that a drug dealer must have obtained certain property with proceeds of an illegal operation because his net worth exceeded the amount he could accumulate by the legal means he evidenced; thus, his gold, silver and real estate could be ordered forfeited. How-

ever, the *Nelson* court premised its holding by stating that it was reviewing an *in personam*, not an *in rem*, proceeding. (851 F.2d at 981.) The defendant was personally liable for the punishment which included forfeiture of the proceeds of the profits of his drug-smuggling organization. By contrast, a proceeding under section 5 of our Act is an *in rem* proceeding (see, *e.g., People v. Dugan* (1985), 109 Ill. 2d 8, 17; *Snyder*, 52 Ill. App. 3d at 613) and does not deal with profits or proceeds but with items used in the violation of the Act. Thus, it was an error for the trial court to rely on *Nelson* and the net-worth theory to determine that the jewelry was subject to forfeiture.

■■ There was no evidence presented in this cause that intervenor used the jewelry in furtherance of a violation of the Cannabis Control Act; thus, the jewelry was not subject to forfeiture. Any use of the jewelry in the cannabis trade was remote. The State contends that the jewelry was received in exchange from the sale of cannabis, but there is absolutely no evidence in the record to support that contention. (See *People v. Gant* (1986), 150 Ill. App. 3d 180, 191.) At most, intervenor may have purchased the jewelry in the past with profits of the drug operation, but section 12 does not apply to profits. *Snyder* dealt only with cash used as capital for use in the drug trade and did not mention profits. (52 Ill. App. 3d at 615.) Finally, the evidence was insufficient to show a nexus between the jewelry and the violation of the statute prohibiting possession of cannabis with the intent to deliver it. Lieutenant Copher testified that the wearing of $20,000 of jewelry was not necessarily an indication of persons engaging in the drug trade. He did not suggest how jewelry might be used in the trade. At most, he testified that many drug dealers purchase jewelry with their illegal profits.

Thus, that part of the judgment disposing of the jewelry must be reversed. In the trial court, intervenor did not seek the return of the jaguar ring or the lady's watch, and no other claimants have joined in this appeal. Therefore, those items cannot be returned when this cause is remanded.

For the above reasons, the judgment of the circuit court is affirmed in part and reversed in part. The cause is remanded for proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

NICKELS and INGLIS, JJ., concur.