# Illinois Official Reports

## Appellate Court

*Tranchita v. Department of Natural Resources*, 2020 IL App (1st) 191251

| | |
|---|---|
| Appellate Court Caption | TOMI TRANCHITA, Plaintiff-Appellant, v. THE DEPARTMENT OF NATURAL RESOURCES; JOSHUA MOOI, Department of Natural Resources Conservation Police Officer; COOK COUNTY, ILLINOIS; and OTHER UNKNOWN POLICE OFFICERS, Individually and as Agents of Cook County and/or the Department of Natural Resources, Defendants-Appellees. |
| District & No. | First District, Sixth Division<br>No. 1-19-1251 |
| Filed | May 1, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2019-CH-05968; the Hon. Franklin U. Valderrama, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Tracy McGonigle, of Woodstock, and G. David Tenenbaum, of Beverly Hills, California, for appellant.<br><br>Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Aaron T. Dozeman, Assistant Attorney General, of counsel), for appellees. |

JUSTICE HARRIS delivered the judgment of the court, with opinion. Justices Cunningham and Connors concurred in the judgment and opinion.


**OPINION**

¶ 1    Plaintiff, Tomi Tranchita, appeals the order of the circuit court denying her motion for a preliminary injunction. In her interlocutory appeal, plaintiff contends that she had a property interest in her coyotes at the time they were seized by Officer Joshua Mooi of the Illinois Department of Natural Resources (IDNR). Therefore, the court should have granted the preliminary injunction. For the following reasons, we affirm.

¶ 2                                I. JURISDICTION

¶ 3    On May 17, 2019, the circuit court entered its order denying the preliminary injunction. Plaintiff filed her notice of appeal on June 17, 2019. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 307(a) (eff. Nov. 1, 2017), governing interlocutory appeals as of right.

¶ 4                                II. BACKGROUND

¶ 5    The following facts are relevant to this interlocutory appeal. Plaintiff's complaint alleged that, for 13 years, she cared for four abused and abandoned coyotes. The senior coyotes, Sandy and Luna, came to her through her work in animal rescue. The other two, Bella and Peyton, came to plaintiff's care from abusive situations. The coyotes were housed within a fully fenced-in spacious backyard, ate appropriate food, and received medical care from a veterinarian. Plaintiff possessed a United States Department of Agriculture (USDA) Class C exhibitor's license, which is the license obtained by zoos to exhibit animals. According to plaintiff, this license "imposes stringent restrictions on the licensee including unannounced annual inspections by a veterinarian or specially trained animal expert." Plaintiff asserts that she "has never been cited for any USDA violation and has passed the inspections with flying colors."

¶ 6    From 2011 to 2016, plaintiff also held a state permit as a fur-bearing mammal breeder, pursuant to section 3.25 of the Wildlife Code. The provision states that "[t]he annual fee for each fur-bearing mammal breeder permit shall be $25" and all such permits "shall expire on March 31 of each year." 520 ILCS 5/3.25 (West 2016). Plaintiff acknowledges that "the permit lapsed in 2016 solely for lack of payment of a $25 annual fee." Plaintiff was not given a notice of license suspension or termination when her permit lapsed.

¶ 7    Early in the morning on April 24, 2019, the IDNR and Cook County animal control conducted a raid on plaintiff's premises pursuant to a search warrant obtained by Officer Mooi. The coyotes were seized in the raid, as well as records and other documents. Plaintiff was instructed to sign a relinquishment form, and she signed because she was told that, if she did not, the coyotes would be euthanized or confined to a small space that "would kill them as a result of being traumatized and stressed." Plaintiff was cited for lacking proper permits. She was also criminally cited for several violations of the Wildlife Code, including section 2.30 for trapping or capturing a coyote out of season, section 3.26 for possessing a coyote without a

"Hound running area permit," and section 2.33(dd) for unlawfully retaining a coyote. *Id.* §§ 2.30, 3.26, 2.33(dd).

¶ 8 The coyotes were transferred to Flint Creek Wildlife Rehabilitation for observation and treatment. Since the seizure, three of the coyotes have died from what was believed to be distemper, a viral disease affecting nonvaccinated animals. Luna remains at the facility.

¶ 9 Plaintiff soon thereafter filed a six-count complaint in which she alleged claims under the fourth and fourteenth amendments of the United States Constitution (U.S. Const., amends. IV, XIV). Plaintiff also filed an emergency motion for preliminary injunctive relief, arguing that the coyotes' lives were at risk if they were not returned. In the motion, plaintiff alleged that she had a constitutionally protected property interest in the coyotes, pursuant to her federal exhibitor license. As a result, she was entitled to notice and an opportunity for a hearing prior to the seizure of the coyotes. She further claimed she would suffer irreparable harm without the relief because the coyotes were unique creatures with no market value and no amount of money could compensate for their loss. Plaintiff argued that she had a likelihood of success on the merits because she had valid possession of the coyotes under Illinois law.

¶ 10 At the hearing on the motion, the trial court found that plaintiff did not have a protected property interest in the remaining coyote because she did not possess the proper Illinois permit at the time of the seizure. The court also found that plaintiff failed to show there was a likelihood of success on the merits in the underlying complaint. Therefore, the trial court denied plaintiff's motion for a preliminary injunction. Plaintiff filed this timely appeal.

¶ 11 III. ANALYSIS

¶ 12 A preliminary injunction is an extreme remedy to be employed only where an emergency exists and serious harm would result without an injunction. *People ex rel. Klaeren v. Village of Lisle*, 202 Ill. 2d 164, 177 (2002). A party seeking a preliminary injunction must show "(1) a clearly ascertained right in need of protection; (2) irreparable harm in the absence of an injunction; (3) no adequate remedy at law for the injury; and (4) the likelihood of success on the merits." *Id.* The trial court's grant or denial of an injunction is generally reviewed for abuse of discretion. *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 62-63 (2006). However, the injunction question here is based on plaintiff's claim that she had a property right in the coyotes and, therefore, that she was entitled to notice and a predeprivation hearing before the IDNR seized them. "A procedural due process claim presents a legal question subject to *de novo* review." *Village of Vernon Hills v. Heelan*, 2015 IL 118170, ¶ 31.

¶ 13 "Procedural due process claims challenge the constitutionality of the specific procedures used to deny a person's life, liberty, or property." *People v. Cardona*, 2013 IL 114076, ¶ 15. In a case alleging deprivation of property, "the threshold question is whether a protected property interest actually exists." *Cole v. Milwaukee Area Technical College District*, 634 F.3d 901, 904 (7th Cir. 2011); *Phillips v. Graham*, 86 Ill. 2d 274, 281 (1981). To demonstrate a constitutionally protected property interest, plaintiff "may not simply rely upon the procedural guarantees of state law or local ordinance." *Cain v. Larson*, 879 F.2d 1424, 1426 (7th Cir. 1989). Rather, plaintiff must have a legitimate claim of entitlement to the property interest. *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010); *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 107 (1990).

¶ 14 Protected property interests are generally created, and their dimensions defined, by state statutes. *Miller v. Retirement Board of Policemen's Annuity & Benefit Fund*, 329 Ill. App. 3d

589, 596 (2001). Therefore, we look to the relevant statutes to determine whether plaintiff had a property interest in the coyotes.

¶ 15        Section 1 of the Domesticated Wild Animals Act provides that

"[a]ll birds and animals ferae naturae or naturally wild, including fur bearing animals not native to this State, when raised or in domestication, or kept in enclosures and reduced to possession, are hereby declared to be objects of ownership and absolute title, the same as cattle and other property, and shall receive the same protection of law, and in the same way and to the same extent shall be the subject of trespass or theft, as other personal property." 510 ILCS 60/1 (West 2016).

This provision clearly recognizes a property interest in coyotes "kept in enclosures and reduced to possession." *Id.* However, the statute further provides that "this Act shall not be held or construed to repeal or modify the provisions of the 'Wildlife Code of Illinois' [Wildlife Code] applicable to the breeding, raising, producing or marketing of any such birds or animals so raised in captivity." *Id.* § 3.

¶ 16        The Wildlife Code states that "[t]he possession of any wild bird or wild mammal protected under this Act, is *prima facie* evidence that the same is subject to all the provisions of this Act, including administrative rules, pertaining to the taking, possession and disposition thereof." 520 ILCS 5/1.20 (West 2016). Coyotes are a protected species of wildlife designated as "fur-bearing mammals" in the Wildlife Code. *Id.* §§ 2.2, 1.2g. The statute further provides that

"[b]efore any individual shall hold, possess or engage in the breeding or raising of live fur-bearing mammals, he shall first procure a fur-bearing mammal breeder permit. Fur-bearing mammal breeder permits shall be issued by the [IDNR]. The annual fee for each fur-bearing mammal breeder permit shall be $25. All fur-bearing mammal breeder permits shall expire on March 31 of each year." *Id.* § 3.25.

Therefore, under Illinois law, a person must have a fur-bearing mammal breeder permit before possessing or raising a coyote.

¶ 17        Plaintiff acknowledges that her fur-bearing mammal breeder permit lapsed in 2016 for nonpayment of the $25 fee. She gives no reason why she stopped paying the fee in 2016 when she had paid for the permit the previous five years. From the moment her permit lapsed, plaintiff's possession of the coyotes violated section 3.25 of the Wildlife Code. Wildlife possessed "contrary to any of the provisions [hereof]" is contraband. *Id.* § 1.2c. No person or party can assert legal ownership or right to possession of property that is contraband. *Dufauchard v. Ward*, 51 Ill. App. 2d 42, 46 (1964).

¶ 18        Plaintiff, however, argues that at all times she possessed a federal Class C exhibitor's license and that section 48-10(b) of the Criminal Code of 2012 (720 ILCS 5/48-10(b) (West 2016)) recognizes a "right of property" in her coyotes pursuant to her federal license. When interpreting a statute, a court's primary objective is to ascertain and give effect to legislative intent. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 479 (1994). The most reliable indicator of that intent is the language of the statute itself, given its plain and ordinary meaning. *Id.*

¶ 19        Section 48-10(b) provides:

"(b) Dangerous animal or primate offense. No person shall have a right of property in, keep, harbor, care for, act as custodian of or maintain in his or her possession any dangerous animal or primate except at a properly maintained zoological park, federally licensed exhibit, circus, college or university, scientific institution, research laboratory,

veterinary hospital, hound running area, or animal refuge in an escape-proof enclosure." 720 ILCS 5/48-10(b) (West 2016).

A plain reading of section 48-10(b) shows a general intent to preclude a person from having a property right in dangerous animals such as coyotes. Having a property right is an exception to the rule, and section 48-10 specifically sets forth the exceptions that apply. Relevant here, section 48-10(b) refers to "a right of property in" a dangerous animal "at a properly maintained *** federally licensed exhibit." *Id.* There is no indication, however, that the mere possession of a federal exhibitor's license satisfies this requirement.

¶ 20        Furthermore, nothing in section 48-10(b) negates the requirement of section 3.25 of the Wildlife Code that a person possessing a coyote must have a fur-bearing mammal breeder permit. "Under the doctrine of *in pari materia*, two statutes dealing with the same subject will be considered with reference to each other, 'so that they may be given harmonious effect.' " *Collinsville Community Unit School District No. 10 v. Regional Board of School Trustees of St. Clair County*, 218 Ill. 2d 175, 185 (2006) (quoting *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 422 (2002)). We find that section 48-10(b) does not give plaintiff a property right in coyotes possessed without a valid fur-bearing mammal breeder permit.

¶ 21        Plaintiff also contends that the IDNR should be estopped from arguing that the coyotes are contraband where she was led to believe she lawfully possessed them. The IDNR never informed plaintiff that her coyote habitat was illegal due to the lapse of her permit for nonpayment of the fee. Plaintiff understood the IDNR's silence to mean it expressly approved of her habitat without the permit. She contends that she invested thousands of dollars in reliance upon the IDNR's approval.

¶ 22        To claim equitable estoppel, plaintiff must show that the other party misrepresented or concealed material facts and she did not know the representations were untrue when they were made. *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313 (2001). The requirements for lawfully possessing a coyote in Illinois are clearly set forth in the Wildlife Code, and the statute expressly states that animals held in violation of its provisions are contraband. See 520 ILCS 5/3.25, 1.2c (West 2016). We have long recognized that " '[a]ll citizens are presumptively charged with knowledge of the law.' " *People v. Boclair*, 202 Ill. 2d 89, 104 (2002) (quoting *Atkins v. Parker*, 472 U.S. 115, 130 (1985)). In fact, plaintiff did know the law because she paid the fee to renew her permit from 2011 to 2016. She asserted that "[s]he did what any law-abiding citizen would be expected to do" by following the IDNR's instructions and "obtain[ing] a Fur-bearing permit." Plaintiff contends the IDNR misrepresented the fact that a permit was required, yet she has known since 2011 that under Illinois law she needed a valid fur-bearing mammal breeder permit for her coyotes. Plaintiff's equitable estoppel claim is therefore without merit.

¶ 23        Plaintiff contends that, subsequent to the seizure of her coyotes, she obtained a fur-bearing mammal breeder permit and she should now be permitted to possess Luna. If plaintiff has since been issued a permit, there is no indication that this fact was presented to the trial court. This is an interlocutory appeal in which "the only question before the reviewing court is whether there was a sufficient showing made to the trial court to sustain its order granting or denying the interlocutory relief sought." *Keefe-Shea Joint Venture v. City of Evanston*, 332 Ill. App. 3d 163, 168 (2002). The only issue raised in this appeal is plaintiff's procedural due process claim. Thus, we will not determine at this time whether plaintiff could or should regain possession of Luna, based on the fact she now has a valid permit, or on the merits of any pending claims in

proceedings below. See *Postma v. Jack Brown Buick, Inc.*, 157 Ill. 2d 391, 399 (1993) (finding that an interlocutory appeal "may not be used as a vehicle to determine the merits of a plaintiff's case").

Before the trial court was the fact that plaintiff did not have a valid fur-bearing mammal breeder permit at the time the IDNR seized her coyotes. Pursuant to the Wildlife Code, coyotes possessed without such a permit are contraband. Without a legitimate claim of entitlement to the property, plaintiff had no right to a property interest protected by due process when her coyotes were seized. *Khan*, 630 F.3d at 527. Therefore, the trial court properly denied her motion for a preliminary injunction. *Klaeren*, 202 Ill. 2d at 177.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.