**In the Matter of $5,662 UNITED STATES CURRENCY.**

**Petitioner: Royce Brown.**

**C.A. No. 95M–10–031–NAB.**

Superior Court of Delaware,
New Castle County.

Submitted: March 2, 1998.
Decided: March 10, 1998.

John P. Deckers, Deputy Attorney General, Wilmington, for the State.

Royce Brown, Pro Se.

## *OPINION*

BARRON, Judge.

This is a civil action filed with the Prothonotary on October 23, 1995, and brought by Royce Brown ("Petitioner") under Superior Court Civil Rule 71.3 seeking the return of $5,662 in United States Currency. The U.S. Currency was seized on August 23, 1995 by members of the Department of Correction, Office of Probation and Parole, in connection with the arrest of Petitioner on a violation of probation warrant. In opposition, the State has timely filed a petition for forfeiture pursuant to 16 *Del.C.* § 4784. Petitioner having waived his right to a trial by jury, this forfeiture proceeding was heard before the Court on November 14, 1997.[1] For the reasons stated herein, pursuant to 16 *Del.C.* § 4784(a)(7), the Court has determined that the petition for the return of the U.S. Currency must be *DENIED*.[2]

## I. FACTUAL BACKGROUND

Officer David Santobianco testified at the forfeiture proceeding that he has been a Probation and Parole Officer for ten years. During the time period in question, he was assigned to the Career Criminal Unit, which included the supervision of Petitioner. Officer Santobianco testified that on August 15, 1995, he attempted to conduct a routine home visit at Petitioner's residence, 1120 Conrad Street in the City of Wilmington. Santobianco testified that such a visit is a standard administrative procedure employed by probation officers. It was known to the probation office that Petitioner resided at that address along with his wife, Latisha Wright, and Darryl Handy, who was also under the supervision of Officer Santobianco.

Upon arrival at the residence on August 15, 1995, Santobianco testified that he observed Handy and Wright located within the residence. He indicated that, upon entry into the residence, he immediately observed a large bag of a white chunk-like substance which he believed to be crack cocaine. The bag was located on a silver platter in the living room area of the residence, immediately adjacent to the front door. Santobianco picked up the bag and asked Handy and Wright what was in the bag and who owned it. Handy then attempted to take the bag away from Officer Santobianco. A struggle ensued and Handy was able to obtain possession of the bag and flee the residence. Dur-

---

1. The civil forfeiture trial took place via video phone, pursuant to the October 30, 1997 covering letter and Order of the Honorable Vincent A. Bifferato. (*See* Exhibit A, a copy of which is attached to the State's Response dated December 31, 1997.) The Court found that a civil non-jury forfeiture trial via video phone was appropriate, given the well-established security concerns of the Department of Correction regarding Petition-er. The Court also found that Petitioner's rights were not in any way infringed upon by this trial process.

2. The Court has primarily adopted the State's December 31, 1997 work product, since it was succinct and well-reasoned.

ing this time, Wright was taken into custody and arrested for, *inter alia,* resisting arrest. At some point after the scuffle, Wilmington police officers were contacted and they arrived at the scene. At approximately 10:10 p.m., Petitioner, who was not involved in the original incident, appeared at his residence. He was apprehended, temporarily placed into custody, and then later released. Santobianco reported the day's events to his supervisors and subsequently obtained approval to seek violation warrants for Petitioner and Handy, and to conduct an administrative search of the residence. Petitioner had violated his probation for being outside of his residence beyond his curfew of 10:00 p.m.

Armed with the authorization to conduct an administrative search, Officer Santobianco return to 1120 Conrad Street on August 23, 1995. He was joined by Probation and Parole Officers Pat Cronin and Larry Collins, as well as by members of the F.B.I. Violent Fugitive Task Force. Upon arrival, Latisha Wright and Petitioner were located within the residence. The probation officers commenced a search of the residence and found the following:

1. In a shoe box in the kitchen, Officer Cronin found numerous clear plastic baggies with small amounts of crack cocaine found inside each baggie;

2. In a backpack on the living room couch, Officer Collins found 16 baggies containing large amounts of crack cocaine in each, as well as $293 in United States Currency;

3. In a black hand bag (or clutch bag), also in the living room, Officer Collins found $2,445 in United States Currency as well as one plastic baggie containing crack cocaine;

4. In an upstairs bedroom safe, Officer Santobianco found $2,279 in United States Currency and a Lorcin semiautomatic .380 caliber handgun;

5. In a wallet in the dining room area, Officer Santobianco found $605 in United States Currency;

6. Throughout the residence, officers also found the following miscellaneous items: numerous rounds of ammunition and a gun cleaning kit, a scale, several clear ziploc plastic baggies, a pager, and a mobile flip phone.

In total, the Probation and Parole officers seized $5,662 in United States Currency, as well as approximately 370 grams of crack cocaine.

■ Petitioner was arrested and charged with the following federal offenses: Possession with intent to deliver crack cocaine, in violation of Title 21 U.S.C. § 841(a)(1) and (b)(1)(A) (the latter section deals particularly with the amount of cocaine, that is, more than 50 grams), Possession of a firearm during the commission of a felony, in violation of Title 18 U.S.C. § 924(c)(1), and Possession of a firearm by a felon, in violation of Title 18 U.S.C., § 922(g)(1). (*See* Exhibit B, Petitioner's indictment in the United State's District court for the District of Delaware, a copy of which is attached to the State's Response dated December 31, 1997.) Following a trial in Federal Court, Petitioner was found guilty of Counts I and III of the indictment. Upon a motion of the United States, Count II of the Federal indictment was dismissed. On November 6, 1997, following a presentence investigation, the Honorable Sue L. Robinson sentenced Petitioner to a total term of 30 years of incarceration.[3] (*See* Exhibit C, Petitioner's judgment and sentence, a certified copy of which is attached to the State's Response dated December 31, 1997.)

## II. CONTENTIONS

The State submits that, pursuant to Superior Court Civil Rule 71.3(f)(1), the Court should accept the factual findings as announced by the members of the jury in Petitioner's criminal case. Specifically, the State

---

**3.** The institution of civil forfeiture proceedings, either prior to or subsequent to the prosecution of criminal proceedings involving the same party and the same subject matter, implicates neither the Double Jeopardy Clause of the United States Constitution nor the comparable protection afforded by Article I, section 8, of the Delaware Constitution. *In re 1982 Honda,* Del.Supr., 681 A.2d 1035, 1036 (1996).

argues that the Court should find that, on August 23, 1995, Petitioner was involved in the illegal acts of Possession with the intent to deliver crack cocaine and Possession of a firearm by a felon. Although Petitioner denied in the forfeiture proceeding that he was involved in illegal drug activity, the State contends that any such denial is legally and factually irrelevant and without merit. The State points to Superior Court Civil Rule 71.3(f) which reads as follows:

(f) *Effect of conviction, acquittal or dismissal.* (1) A Defendant convicted in any criminal proceeding is precluded from later denying the essential allegations of the criminal offense of which the Defendant was convicted in any proceeding brought pursuant to this rule, regardless of the pendency of an appeal from that conviction.

During the course of the forfeiture proceeding, the State did not call a witness to testify as an expert on the practices of persons involved in drug dealing in New Castle County. The State contends that the Court should, nevertheless, take judicial notice of the fact that persons in possession of significant amounts of crack cocaine (in this case, more than 30 grams), possess that substance with the intent to ultimately deliver it to another by sale. The State also contends that the Court should also take judicial notice of the fact that such quantities of cocaine have an exceedingly high retail value. The State points out that the Court has heard the testimony of numerous drug experts, and should recognize the fact that a gram of cocaine often sells for $100. Therefore, according to the State, the amount of drugs seized from Petitioner on August 23, 1995 had an approximate street value of $37,000.

Petitioner testified during the course of the forfeiture proceeding, and he subsequently provided the Court with numerous documents for consideration. Petitioner maintained that he was not involved in illegal drug activities. Instead, indicated that the

currency seized from him was obtained through lawful sources. Petitioner did testify, however, that the $293 located by Officer Collins in a backpack along with 16 large baggies of crack cocaine was not his money. He, therefore, amended his initial Petition to delete that sum. Petitioner testified that the money seized in the black hand bag in the living room, totaling $2,445, belonged to his wife and was obtained from her employment at a hair salon. Petitioner testified that the $605 found in a wallet in his living room and the $2,279 found in his bedroom safe were not related to drug sales or drug activity of any kind. He indicated that he and his wife had obtained money from an insurance settlement following an automobile accident involving a 1987 Cadillac DeVille, which he claimed to have owned.

Upon a thorough review of the voluminous documents that Petitioner has supplied to the Court, two documents identify a potential source of income through lawful means. One document, a form letter dated June 13, 1995 and addressed to Latisha Wright, purports to be an insurance settlement agreement for a property loss. The letter indicates that a check in the amount of $2,500 was being mailed to Ms. Wright and, furthermore, that a balance of $2,500 would be sent to Ms. Wright upon completion of the settlement application and upon receipt of certain documents. The other document, a form letter dated June 26, 1995, reflects that another check of $2,500 was sent to Latisha Wright as a final payment of her insurance claim. The Court notes that the insurance settlement agreement was between Liberty Mutual Insurance Company and Latisha Wright, not Petitioner. Further, Petitioner has failed to introduce any of the following: receipts or check stubs showing that either check was cashed or deposited in any bank account; and bank statements showing that money was received by Ms. Wright in the form of checks and, thereafter, converted into cash.[4]

---

4. A pay stub for the period ending March 19, 1995 showing net income in the amount of $408.08 and payable to Royce E. Brown was also included as an exhibit in Petitioner's Response received by the Court on February 6, 1996. The exhibit reflects pay which Petitioner received five months prior to the incident in question. It also reflects a rather insubstantial amount. It is, therefore, not given any weight relative to the current controversy. The same holds true for payment receipts showing certain income of Latisha Wright as a result of her employment at a

## III. DISCUSSION

∎ The Delaware Forfeiture of Drug Profits Act[5] (hereinafter "the Forfeiture Act") authorizes the State to seize and forfeit various property associated with the trade in illegal drugs for the purpose of crippling the trafficking and sale of such drugs. *In the Matter of One 1987 Toyota*, Del.Super., 621 A.2d 796, 798 (1992). In a forfeiture proceeding, the State "has the initial burden of proving that probable causes exists for the institution of a forfeiture proceeding." *In the Matter of One 1985 Mercedes Benz Auto.*, Del.Super., 644 A.2d 423, 428 (1992). This Court has held that "[t]he probable cause standard for forfeiture is essentially the same as that applied in Fourth Amendment search and seizure cases." *In the Matter of One 1987 Toyota*, 621 A.2d at 799. "Generally, probable cause in a forfeiture action is 'a reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion.'" *In the Matter of One 1985 Mercedes Benz Auto.*, 644 A.2d at 428 (*quoting In the Matter of One 1987 Toyota*, 621 A.2d at 799).

With specific regard to currency, the Forfeiture Act authorizes the forfeiture of "moneys ... furnished, or intended to be furnished, in exchange for a controlled substance or drug paraphernalia in violation of [the Controlled Substances Act]; all profits or proceeds traceable to securities, assets or interest used, or intended to be used, to facilitate any violation of [the Controlled Substances Act]." 16 *Del.C.* § 4784(a)(7).[6] More particularly, the Forfeiture Act provides that "all moneys ... found in close proximity to forfeitable controlled sub-

stances ... are presumed to be forfeitable under [the Controlled Substances Act]." 16 *Del.C.* § 4784(a)(7)a.

∎ Under this condition, the burden of proof shifts to the Petitioner to rebut the presumption of forfeiture. *Id.* As a preliminary matter, however, a Petitioner must prove that he has a "lawful possessory interest in the seized property" before he may challenge the forfeiture of property by the State. 16 *Del.C.* § 4784(j)(1), *In the Matter of One 1985 Mercedes Benz Auto.*, 644 A.2d at 428, n. 5. The fact that Petitioner in the instant case is the husband of Latisha Wright, the purported "owner" of much of the seized money, and the fact that he claims to have jointly possessed the money with her in their residence sufficiently confers standing in this proceeding. Super.Ct.Civ.R. 71.3(c); *U.S. v. $122,043.00 in United States Currency*, 792 F.2d 1470, 1473 (9th Cir.1986). Once standing has been established, a petitioner must then prove by a preponderance of the evidence that the money was "unlawfully seized or that it is not subject to forfeiture." *In the Matter of One 1985 Mercedes Benz Auto.*, 644 A.2d at 429.

∎ Additionally, Superior Court Civil Rule 71.3 provides, in part, that "[a] defendant convicted in any criminal proceeding is precluded from later denying the essential allegations of the criminal offense of which the defendant was convicted in any proceeding brought pursuant to this Rule, regardless of the pendency of an appeal from that conviction." Super.Ct.Civ.R. 71.3(f)(1). This Rule recognizes that the policy of collateral

---

hair salon. Clearly some income was needed to pay for normal expenditures such as rent, food, utilities, etc.

**5.** 16 *Del.C.* § 4784 *et seq.*

**6.** Section 4784(A)(7) states:

(a) The following shall be subject to forfeiture to the State and no property rights shall exist in them:

\* \* \* \* \* \*

(7) All moneys, negotiable instruments, securities or any other thing of value furnished, or intended to be furnished, in exchange for a controlled substance or drug paraphernalia in

violation of this chapter; all profits or proceeds traceable to securities, assets or interest used, or intended to be used, to facilitate any violation of this chapter. However, no property interest or any owner, by reason or any act or omission established by the owner to be committed or omitted without the owner's knowledge or consent shall be forfeited in the items listed in this paragraph:

(a) All moneys, negotiable instruments or securities found in close proximity to forfeitable controlled substances, or to forfeitable records of the importation, manufacture or distribution of controlled substances are presumed to be forfeitable under this paragraph. The burden of proof is upon Petitioner of the property to rebut this presumption.

estoppel is equally applicable to the specific circumstance of civil drug forfeitures. The policy of collateral estoppel is followed generally by Delaware courts [7] and is also the rule adopted by the Restatement of Judgments.[8] The $5,369 in currency remaining at issue in this Petition was seized from Petitioner's residence pursuant to a valid authorization to conduct an administrative search of Petitioner's residence. The evidence gathered during the course of the search ultimately resulted in his arrest and subsequent conviction in District Court for Possession with intent to distribute more than 50 grams of crack cocaine and Possession of a firearm by a felon. Pursuant to Civil Rule 71.3(f)(1), he is now estopped by virtue of that conviction from relitigating the validity of the search and his arrest for his possession of controlled substances. Super.Ct.Civ.R. 71.3(f)(1).[9] While the Petitioner is precluded from contesting his possession of cocaine and subsequent conviction, he may still argue that the seized currency was not related to illicit drug activity.

■ Once the arresting officers discovered the cash, "the seizure of [the] property ... [was] presumptively reasonable" and the offi-

cers had "probable cause to associate the property with criminal activity," based upon the totality of the circumstances known to them at the time. *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983). The totality of the circumstances encountered by the officers arresting Petitioner included the following: during his previous home visit, Officer Santobianco observed what appeared to be a large bag of crack cocaine; he had also struggled with Handy (Petitioner's roommate) and Wright (Petitioner's wife) after observing the cocaine; Petitioner was in violation of his probation; and drug paraphernalia was found within the residence, including a firearm, a scale, and baggies. Petitioner was also previously convicted of drug offenses.

In addition to the specific circumstances surrounding Petitioner's arrest in this case, it is widely recognized that drug dealers often carry large sums of cash.[10] Therefore, the currency's incriminating character was "immediately apparent." [11] Under all of the circumstances, the arresting officers had probable cause to conclude that the moneys found in Petitioner's residence were "moneys ... furnished, or intended to be furnished, in

7. *Warmouth v. Delaware State Bd. of Examiners in Optometry,* Del.Super., 514 A.2d 1119 (1985) (holding that conviction of criminal charges is acceptable in subsequent administrative revocation of registration as conclusive evidence of facts set forth in informations); *Evans v. Meekins,* Del.Super. C.A. No. 86C–JA–142, Bifferato, J., 1986 WL 14218 (Dec. 3, 1986) (Mem.Op.) (providing that where issues were previously decided in litigation and appeal of criminal charges, collateral estoppel precludes relitigation in subsequent legal malpractice action); *U.S. v. One Parcel of Property Located at 200 Penna. Ave., Claymont, De.,* 786 F.Supp. 400 (D.Del.1992) (holding that collateral estoppel applies to facts which were a critical and necessary part of the judgment and issues which were necessarily decided).

8. Restatement (Second) of Judgments §§ 85, 27, 28 (1982).

9. *See also, One Parcel of Property Located at 200 Penna. Ave., Claymont, De.,* 786 F.Supp. at 406 ("Normally, individuals convicted of the crime for which they were arrested cannot subsequently challenge the probable cause supporting the arrest in a civil action.") Here, on June 20, 1996, the Honorable Sue L. Robinson denied Petitioner's motion for the suppression of evi-

dence and incriminating statements. (*See* Exhibit D, *United States v. Brown,* Crim.Action No. 95–69–SLR, Robinson, J. (Jun. 20, 1996) (Mem.Order), a copy of which is attached to the State's Response dated December 31, 1997.) By virtue of Judge Robinson's Memorandum Order, Petitioner is estopped form relitigating the validity of the search and seizure in this case. Interestingly, in her Order, the Judge noted that although Petitioner was unemployed, Officer Santobianco noticed that on August 15, 1995, Petitioner "appeared to have recently obtained a number of expensive possessions (e.g., a Cadillac with temporary tags, a flip phone, gold jewelry)." *Id.* at 2. At the forfeiture hearing, Petitioner offered no explanation as to how he had managed to obtain these possessions. Could the Cadillac have been purchased with the insurance proceeds? While the answer is unknown, it is an intriguing question.

10. *See Jennings v. State,* Ind.App., 553 N.E.2d 191, 193 (1990); *People v. 1984 BMW 528E Auto.,* 208 Ill.App.3d 930, 153 Ill.Dec. 696, 567 N.E.2d 654, 658 (1991).

11. *Horton v. California,* 496 U.S. 128, 136, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) (citations omitted).

exchange for a controlled substance or drug paraphernalia...." 16 *Del.C.* § 4784(a)(7). *See State v. Hedley*, Del.Super., 593 A.2d 576, 580 (1990) (holding that a scale seized during search "was, to an experienced police officer, the type used by drug dealers and, therefore, there existed a probability [that] the scale would be useful as evidence of a crime") (motion to suppress granted on other grounds).

Furthermore, the State has shown that the entirety of the $5,662 in currency was found in "close proximity to forfeitable controlled substances," thereby raising a presumption that the money is forfeitable. 16 *Del.C.* § 4784(a)(7). Some courts have held that "money found on or near a person who is committing, attempting to commit or conspires to commit any of the specifically enumerated [drug] offenses is presumed forfeitable—period."[12] This Court concludes that the various denominations of money seized in this case were found on or near Petitioner, during his commission of the crimes for which he was ultimately convicted in Federal Court. The State having met its burden, the burden of proof shifted to Petitioner to rebut the presumption of forfeiture. *In the Matter of One 1987 Toyota*, 621 A.2d at 799.

In order to rebut the State's case, Petitioner testified that the seized currency was not related to drug dealing and that the State had not proven a nexus between the money and drug activity. He claimed that the money was from legitimate sources, including his wife's employment and the insurance settlement. Other than the two insurance settlement form letters, Petitioner has failed to offer any reliable follow-up documentation of these claims, or any other corroborating evidence. Petitioner's wife, Latisha Wright, did not testify during the forfeiture proceeding, nor, to the Court's knowledge, has she petitioned for the return of any of the money sought to be forfeited by the State.[13]

Petitioner's position is similar to the position taken by the claimant in *U.S. v. $41,305.00 in Currency and Traveler's Checks*, 802 F.2d 1339 (11th Cir.1986).[14] In that case, money had been seized from the residence of the claimant and her husband during the execution of a search warrant obtained after the husband's arrest at another location for selling cocaine. *Id.* at 1341. The money was seized even though the search failed to produce illegal drugs in the house. *Id.* The District Court found that the government established probable cause to forfeit the money based on the following factors: the husband's prior drug conviction in State court, his guilty plea to drug charges in Federal court, and his disclosure several months after the money was seized that he had buried cocaine at the property. *Id.* at 1341. Although the claimant offered evidence of three innocent sources of the money, the Court held that she failed to prove innocent ownership. *Id.*

On appeal, the claimant argued that the government failed to show a nexus between the money seized and a particular drug deal. *Id.* at 1343. The Court of Appeals rejected this argument, holding:

The government need not trace the cash to specific transactions, or actually prove by a preponderance of evidence a substantial connection to drug dealing. The government must merely furnish probable cause,

---

**12.** *Caudill v. State*, Ind.App., 613 N.E.2d 433, 438 (1993) (listing states with similar approach); *People v.1984 BMW 528E Auto.*, 153 Ill.Dec. 696, 567 N.E.2d at 658.

**13.** The Court recognizes that the Forfeiture Act should be construed to protect innocent owners and co-owners to the extent of their interest in the forfeited property. *In re One 1986 Pontiac Firebird*, Del.Supr., 687 A.2d 190, 192 (1997).

**14.** Section 4784 of Title 16 is modeled closely upon the parallel Federal statute, 21 U.S.C. § 881(a). *In re 1982 Honda*, 681 A.2d at 1036. "Since Delaware has little case law interpreting 16 *Del.C.* § 4784, the Court has previously looked to the federal courts for guidance." *In the Matter of One 1985 Mercedes Benz Auto.*, Del.Super., 644 A.2d at 427 (citation omitted). Additionally, the Court has construed the forfeiture statute "[i]n light of the purposes of civil forfeiture actions and the modern reality of increased drug-related crime..." *One 1987 Toyota*, 621 A.2d at 800. Finally, the Court has given effect to "the broad language of Section 4784, as modeled after 21 U.S.C. § 881 (which has been accorded liberal construction by the federal courts) ..." *One 1985 Mercedes Benz Auto.*, 644 A.2d at 429.

i.d., reasonable grounds to believe that a substantial connection exists between the money seized and ... drug dealing.... [C]onclusive proof that the money was connected to a drug offense is not necessary. The government's task is to present only enough evidence to shift the burden of proof to the Claimant.

*Id.* at 1343–1344 (citations omitted).

The Court of Appeals also discounted the claimant's argument that, once the burden of proof shifted to her, the District Court erred in rejecting her evidence of innocent ownership of the money. *Id.* at 1344. The appellate court observed:

The District court, on recommendation of the magistrate, found that this evidence showed only a "possible" independent source rather than a direct connection between the innocent transactions and the money seized ... [The Claimant] contends that proof of a direct connection is both legally unnecessary and factually impossible due to the fungible nature of money. In support, appellant cites *U.S. v. $131,602.00 in U.S. Currency*, 563 F.Supp. 921 (S.D.N.Y.1982), which holds that a Claimant meets her burden of proof simply by showing that at some time she had received from an innocent source an amount of money equal to that at issue in the forfeiture action. The Southern District of New York adopted this approach because a fungible good such as cash is difficult to trace....

We too recognize that currency is fungible but we do not believe this fact necessitates as low a burden of proof as that imposed by the Southern District of New York.... [O]nce probable cause is established, one claiming the money must show by a preponderance of the evidence an alternate source for the funds. Where the government has presented evidence of an illegal source, the Claimant must do more than show the existence of possible legitimate sources of cash.

*Id.* at 1344–45. The Court of Appeals further held that, "[g]iven the legal requirement that she had to come forth with the evidence, [she] had of necessity to establish her financial transactions...." *Id.* at 1345. Thus, the Court found that the evidence presented by the claimant did not demonstrate more than the possibility of legitimate sources of cash, and "[m]ore importantly, such a possibility does not constitute a preponderance of evidence defeating forfeiture." *Id.*

Likewise, the State presented evidence that the currency was found during the course of a valid administrative search which resulted in the seizure of approximately 370 grams of crack cocaine. Additionally, Petitioner has been found guilty after a jury trial on the charge of Possession with intent to distribute more than 50 grams of crack cocaine. Finally, the currency was found in the living room and bedroom safe, both of which were in close proximity to the cocaine. Thus, pursuant to the Forfeiture Act, the money is presumed forfeitable.[15] The evidence offered by Petitioner to rebut the statutory presumption was vague and conclusory in nature, and, thus, inadequate to constitute a preponderance of evidence defeating forfeiture.[16]

## IV. CONCLUSION

After hearing testimony and reviewing the record, the Court concludes that the State has established probable cause to have seized the U.S. Currency and to have initiated the forfeiture proceeding. Petitioner, on the oth-

---

**15.** Even though the State had established probable cause by proving that the currency was in Petitioner's possession at the same time he was arrested for possession with intent to distribute illegal drugs and that the money was in close proximity to the controlled substances, it remains theoretically possible that some of the money came from legitimate sources. Nonetheless, Federal Courts have held that "legitimate funds are forfeitable when knowingly commingled with forfeitable funds." *U.S. v. $33,836 in U.S. Currency*, 899 F.Supp. 574, 579 (M.D.Ala. 1995) (citation omitted).

**16.** On the issue of credibility, the Court found the State's witness to be far more credible than the Petitioner.

er hand, has not met his burden of rebutting the presumption that the contested amount of $5,369 in United States Currency is forfeitable, in accordance with 16 *Del.C.* § 4784(a)(7). It follows that the Petitioner's Petition for Return of Property is ***DENIED***.

***It Is So ORDERED.***[17]

---

[17] In accordance with Supr.Ct.R. 6(a)(i), Petitioner is accorded 30 days from the entry upon the docket of this Memorandum Opinion in which to appeal said opinion to the Delaware Supreme Court.