# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN THE MATTER OF:      )
                              )
**$25,640.00 in United**     )  C.A. No. K17M-07-015 WLW
**States Currency:**        )  In and for Kent County
                              )
                              )
**Petitioner: Odai I. Mustafa**  )

## COMMISSIONER'S ORDER

### Upon Petition for Return of Property
### *Denied*

Gregory R. Babowal, Esquire, Deputy Attorney General, Dover, Delaware, for the State of Delaware.

Gary E. Junge, Esquire, Schmittinger & Rodriguez, P.A., Dover, Delaware, for the Petitioner.

FREUD, Commissioner
September 28, 2018

Odai I. Mustafa ("Petitioner") has filed a Petition for Return of Property pursuant to 16 *Del. C.* § 4784 and Superior Court Civil Rule 71.3. The property sought to be returned is $25,640.00 in United States Currency seized by the Delaware State Police on May 30, 2017, pursuant to 16 *Del. C.* § 4784. The Petition was referred to the Court Commissioner pursuant to Superior Court Civil Rule 132(a)(3). For the reasons below, I *deny* the Petition.

**FACTS**

At the hearing, the State called Delaware State Police Trooper Brian Holl ("Trooper Holl"). He testified he has worked for the Delaware State Police for three years and that he completed Drug Interdiction training. Based upon that training Trooper Holl testified that it is very common to find drug dealers carrying large amounts of U.S. currency and drugs. Trooper Holl stated that at approximately 3:00 a.m. on May 30, 2017 he observed a minivan with a Virginia license plate swerving in the roadway on U.S. 13 southbound in Kent County, Delaware. Trooper Holl testified that he observed the minivan swerve three or more times. According to the Affidavit of Probable Cause filed in the Petitioner's underlying criminal matter, Trooper Holl "...observed the vehicle place its left tires on the center dashed white line and then swerve to the right subsequently placing its tires on the white fog line."[1] Trooper Holl also testified that there were no other cars in the roadway at the time and it was not raining.

Trooper Holl continued to follow the Petitioner until it was safe to conduct a traffic stop and pulled Petitioner over for making an Illegal Lane Change and for suspicion of Drunk Driving. Trooper Holl activated his emergency equipment and was in uniform when he approached Petitioner's vehicle which had stopped at a Valero gas station. Petitioner was the only occupant of the minivan. Trooper Hall asked the Petitioner why he had been swerving over the roadway and Petitioner stated that the alignment on his vehicle needed to be fixed and that he was "not under the

---

[1] *State v. Mustafa*, Del. Super., ID No. 1705020609 (May 30, 2017), D.I. 1.

2

influence of marijuana." While speaking with the Petitioner, Trooper Holl noticed a strong odor of marijuana and asked Petitioner about the smell to which the Petitioner replied "I just smoked a blunt at the gas station earlier."[2] After a computer check the Trooper discovered that the Petitioner's drivers license was suspended. Upon further questioning about marijuana Petitioner stated that he had a small quantity of marijuana in the vehicle and approximately $1,800.00.

All the while Petitioner appeared nervous and his hands were visibly shaking. The Trooper then asked if there was anything else in the car and Petitioner said "no." Based upon the strong smell of marijuana and Petitioner's demeanor the trooper searched the vehicle and discovered approximately three pounds of marijuana and $23,635.00 in the various denominations of currency banded together in rubber bands hidden together in the "stow and go" rear seat area of the minivan. Also found were several air fresheners called "Blunt Blockers" which are a product designed to conceal the odor of marijuana. Trooper Holl testified that three pounds of marijuana has a value of approximately $12,000.00.

Petitioner was arrested for Aggravated Possession, Not Having a Valid License and an Improper Lane Change. Trooper Holl stated he neglected to charge Petition with Drug Dealing. Prior to being indicted Petitioner and the State reached a plea deal whereby Petitioner agreed to plead guilty to Aggravated Possession and to waive Indictment. On July 6, 2017 just over a month after his arrest Petitioner pled guilty and signed the Truth-in-Sentencing Guilty Plea Form waiving his constitutional

---

[2]  *Mustafa*, Del. Super., ID No. 1705020609 at D.I. 1.

3

rights. He also acknowledged during the Plea Colloquy that he knowingly and voluntarily waived his constitutional rights and admitted that he was guilty of Aggravated Possession of over three pounds of marijuana.

Next, the State called Master Sergeant Randy Fisher of the Delaware National Guard Drug Task Force. Master Sergeant Fisher is the officer in charge of performing ION scans of suspected drug money. He stated he has been fully trained in operating the ION scan machine and has performed thousands of scans over the years and has been accepted as an expert in Delaware courts multiple times. He stated that all currency has trace amounts of drugs and that his office periodically takes samples of currency to establish a base line for trace amounts. They then set the ION scan machine to alert if twice the average amounts are detected. Master Sergeant Fisher performed the scan on the seized currency on June 12, 2018. At that time the average measure on currency in circulation was 150 maximum amplitude and the amount detected on Petitioner's seized currency was 889 maximum amplitude almost six times higher than the average for our region.

Next, the Petitioner testified. He claimed that he had been on his way back to his home in Virginia after visiting his mother in New York City. He stated he owns a smoke shop in New Church, Virginia and that he makes between $5,000.00 and $15,000.00 a day selling cigarettes. Copies of his 2015 tax return, inventory for the cost of goods sold in 2015, his 2015, 2016 and 2017 Virginia sales tax liability receipts were admitted as evidence for his claim that the $25,640.00 was not proceeds from drug sales. Petitioner claimed that prior to leaving Virginia to visit his mother

4

he closed his shop and took all the cash on hand from the business and instead of depositing the money in the bank he chose to take it with him to New York because going to the bank would have been out of his way. He claimed he did not bring the money for the purpose of making a drug purchase. Petitioner further stated that he goes to New York once a month. He stated he purchased the three pounds of marijuana in New York from a friend for $7,000.00. He stated the marijuana was for his personal use and that he smokes a lot of marijuana. He also stated "he doesn't make a lot of money," and that because of the seizure of the money had had been unable to re-open his business.

During the hearing the dash camera video of Trooper Holl's police car was offered as evidence. The video clearly shows Petitioner weaving back and forth across the roadway multiple times. Following the hearing I reviewed Petitioner's underlying criminal file and note that on July 17, 2018 a capias was issued for Petitioner's arrest due to an allegation of a Violation of Probation. According to the Violation of Probation report the Petitioner was indicted by the Grand Jury of Circuit Court for the County of Accomack, Commonwealth of Virginia on April 2, 2018 on charges of Possession with the Intent to Deliver Marijuana (felony) and Possession of Drug Paraphernalia (misdemeanor). Trial is set for November 1, 2018.[3] The offenses allegedly occurred on August 17, 2017 during the term of Petitioner's probationary period for the Aggravated Possession charge and just over one month after his guilty plea in Delaware on this matter. According to the report the charges

---

[3] The Court staff contacted Petitioner's Probation Officer to verify this information.

5

were pending on the dates the report was written. The capias for Violation of Probation with a requested $5,000.00 cash bail issued by the Court on July 17, 2018 is still outstanding today.

## ANALYSIS

The Delaware Forfeiture of Drug Profits Act ("Forfeiture Act") authorizes the State to seize and forfeit various property associated with the trade in illegal drugs for the purpose of crippling the trafficking and sale of such drugs.[4] In a forfeiture proceeding, the State has the initial burden of proving that probable cause exists for the institution of a forfeiture.[5] "Once the government has met its burden of showing probable cause, the burden shifts to the claimant to show by a preponderance of the evidence that the property was not subject to forfeiture."[6]

With specific regard to currency, the Forfeiture Act authorizes the forfeiture of "moneys . . . furnished, or intended to be furnished, in exchange for a controlled substance or drug paraphernalia in violation of [the Controlled Substances Act]; all profits or proceeds traceable to securities, assets or interest used, or intended to be used, to facilitate any violation of [the Controlled Substances Act.]".[7] More

---

[4] *In re One 1987 Toyota*, 621 A.2d 796 (Del. Super. 1992).

[5] *In re One 1985 Mercedes Benz Automobile*, 644 A.2d 423 (Del. Super. 1992).

[6] *One 1987 Toyota*, 621 A.2d at 799.

[7] 16 *Del. C.* § 4784(a)(7). Section 4784(A)(7) states:
    (a)    The following shall be subject to forfeiture to the State and no property rights shall exist in them:
                * * * * *

particularly, the Forfeiture Act provides that "all moneys . . . found in close proximity to forfeit able controlled substances . . . are presumed to be forfeit able under [the Controlled Substances Act]".[8]

To commence a forfeiture proceeding, the State must first establish that it has probable cause to believe that the money seized was to be used in the trade of illicit drugs or drug paraphernalia.[9] "Generally, probable cause in a forfeiture action is 'a reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion.'"[10] This "reasonable ground for belief of guilt" may be based upon the totality of the circumstances known to the officers at the time of seizure who are on the scene.[11] To demonstrate probable cause, "the government

---

(7)    All moneys, negotiable instruments, securities or any other thing of value furnished, or intended to be furnished, in exchange for a controlled substance or drug paraphernalia in violation of this chapter; all profits or proceeds traceable to securities, assets or interest used, or intended to be used, to facilitate any violation of this chapter. However, no property interest or any owner, by reason or any act or omission established by the owner to be committed or omitted without the owner's knowledge or consent shall be forfeited in the items listed in this paragraph:

(a) All moneys, negotiable instruments or securities found in close proximity to forfeitable controlled substances, or to forfeitable records of the importation, manufacture or distribution of controlled substances are presumed to be forfeitable under this paragraph. The burden of proof is upon Petitioner of the property to rebut this presumption.

[8]  16 *Del. C.* § 4784(a)(7)a.

[9]  *One 1985 Mercedes Benz Auto*, 644 A.2d 423, 428 (Del. Super. 1992).

[10]  *Id.* (quoting *One 1987 Toyota*, 621 A. 2d. at 799.

[11]  *$5,662 U.S. Currency*, 714 A.2d 106, 111 (Del Super. 1998).

7

need not trace the cash to specific transactions, or actually prove by a preponderance of evidence a substantial connection to drug dealing. The government must merely furnish probable cause, i.e., reasonable grounds to believe that a substantial connection exists between the money seized and [claimant's] drug dealing.[12] Further, "probable cause may be based wholly on circumstantial evidence."[13] The Delaware Superior Court has held that where officers find drugs and drug paraphernalia, such as an electronic scale, baggies, etc., that those officers had probable to believe that the cash found in close proximity to these items was "moneys...furnished, or intended to be furnished, in exchange for a controlled substance or drug paraphernalia..."[14]

In the present case, it is clear that the State has satisfied its initial burden of establishing probable cause to initiate a forfeiture proceeding. In *Brown v. State*, the Delaware Supreme Court held that where a parole and probation officer found a bundle of cash within close proximity to a large amount of cocaine, the State adequately established probable cause.[15] Similarly, since Trooper Holl in the case at hand found $25,640.00 hidden with the three pounds of marijuana concealed together in the back of the van along with several air fresheners designed to conceal the odor of marijuana, and the fact that Petitioner lied to the police, the State established

---

[12] *$5,662 U.S. Currency*, 714 A.2d at 113, quoting *U.S. v. $41,305.00 in Currency & Traveler's Checks*, 802 F.2d 1339, 1343 (11th Cir. 1984).

[13] *Id.*

[14] 16 *Del. C.* § 4784(a)(7); *In re $5,662 U. S. Currency*, 714 A.2d at 111-112.

[15] *Brown v. State*, 721 A.2d 1263, 1265 (Del. 1998).

sufficient probable cause to seize the money and to initiate a forfeiture proceeding. Supporting this finding is a consideration of the totality of the circumstances in the case at hand. The Delaware Superior Court has explained that 'it is widely recognized that drug dealers often carry large sums of cash.'[16] In this case we also have the evidence that the Petitioner was also arrested for Drug Dealing in Virginia shortly after his guilty plea in Delaware.[17] The additional testimony showing drug residue approximately six times higher than the average also supports the forfeiture. Petitioner argues that the evidence should be given little weight. I, however find it compelling along with all the other facts. Petitioner's criminal record and the close proximity of the drugs, large amount of cash and Petitioner's deception clearly supports the reasonable belief that the money and controlled substances found in the car were substantially connected. Petitioner also stated on the record that he used part of the money he brought with him from Virginia to New York to purchase marijuana. These facts are sufficient to meet the State's burden of probable cause to believe that the money seized was to be used in the trade of illicit drugs.

As the State has met it's burden, the focus shifts to the Petitioner to first establish standing to bring a claim to the money and then to demonstrate by a preponderance of the evidence that "the money was unlawfully seized or not subject

---

[16] $5,662 U.S. Currency, 714 A.2d at 111.

[17] Of course since the Petitioner has not yet been found guilty of this charge he is entitled to the presumption of innocence. Nevertheless, the fact that he was arrested for Drug Dealing a short time after his plea in this case is interesting.

to forfeiture."[18] The Petitioner must show that he has standing to challenge the forfeiture proceeding by proving that he has a lawful possessory interest in the seized property.[19] The standard to establish standing, therefore, is relatively low. In the case at hand, Petitioner has claimed that he is the rightful owner of the money. I find that Petitioner's allegation that the money was his along with the fact that no one else has stepped forward to claim it, is sufficient to meet his burden as far as standing to contest the forfeiture.

Despite having standing, Petitioner has clearly not satisfied the greater burden of proof in demonstrating by a preponderance of the evidence that the money was unlawfully seized and/or that it is not subject to forfeiture. In order to demonstrate that the money was not subject to forfeiture the Petitioner would have had to show "by a preponderance of the evidence that there was an alternate source of funds."[20] The Delaware Supreme Court has defined "preponderance of the evidence" to mean the side on which "the greater weight of evidence is found."[21] The Delaware Superior Court has adopted the Eleventh Circuit's requirement that "where the government has presented evidence of an illegal source, the claimant must do more than show the

---

[18] $5,662 U.S. Currency, 714 A.2d at 110.

[19] *$5,662 U.S. Currency,* 714 A.2d at 110.

[20] *Id.,* at 113, quoting *$41,305.00 in Currency & Traveler's Checks,* 802 F.2d at 1339.

[21] *Taylor v. State,* 2000 WL 313501, at *2 (Del. 2000), quoting *Reynolds v. Reynolds,* 237 A.2d 708, 711 (Del. 1967).

existence of possible legitimate sources of cash."[22]  The mere possibility of an innocent source of the money, for example, would not satisfy the preponderance of evidence standard.[23]  Insufficient showings of possible legitimate sources include presenting "some evidence of legal income approximating the seized amount"[24] and offering evidence of IRS forms in an attempt to show that the money came from gambling.[25]  This high standard was elucidated in *Matter of $5,662*, where the petitioner claimed that the seized money was from legitimate sources, including his wife's employment and an insurance settlement.[26]  There, the court found that other than two insurance settlement form letters, the petitioner failed to offer any reliable follow-up documentation of his claims to the money or any other corroborating evidence.  Thus, the Delaware Superior Court found that the petitioner had not met his burden of proof.[27]  Petitioner attempts to meet his burden by providing tax returns and business records from his cigarette sales business to show that there was an alternate source for the funds.  However the records reflect a shaky business. In fact upon questioning Petitioner admitted to being a poor business man.  He also stated

---

[22]  *$41,305.00 in Currency & Traveler's Checks*, 802 F.2d at 1344-45.

[23]  *$41,305.00 in Currency & Traveler's Checks*, 802 F.2d. at 1345.

[24]  *Brown*, 721 A.2d at 1265.

[25]  *In re $1,800.00 in U.S. Currency*, 2002 WL 433024 (Del. Super.).

[26]  *$5,662 U.S. Currency*, 714 A.2d at 110.

[27]  *Id*. at 113.

11

that because of the seizure of the $25,634.00, which according to him represented one week's worth of income, he was unable to subsequently re-open his business because he did not have the funds to purchase any more cigarettes. This is, to me, an astonishing admission of incompetence in business and suggests that the money at hand was intended to be used to purchase marijuana in New York City and re-sell it in Virginia. His testimony that he went to New York once a month supports this conclusion. Additionally, despite his testimony that the seizure of the $25,640.00 kept him from re-opening his cigarette business it apparently did not stop him from continuing to associate with drugs as evidenced by his arrest for dealing drugs in Virginia, which was alleged to have occurred a mere month after his guilty plea in Delaware for Aggravated Possession. Further, Petitioner fails to demonstrate that saving large quantities of cash in his car was his regular practice. This is a point which the Eleventh Circuit Court brought up in *$41,305.00 in Currency and Traveler's Checks*, a case which the Delaware Superior Court has used as guidance in its own forfeiture cases. The Court found that, in part, petitioner had not met her burden of proof because she had not shown that she customarily kept large sums of cash.[28] Petitioner could have offered proof of this habit by showing bank deposit receipts demonstrating regular, weekly deposits of large sums of cash. However, Petitioner has not furnished such a form of reliable proof.

Given that Petitioner pled guilty to one count of Aggravated Possession, his dubious business record and the fact that a large quantity of illegal drugs were found

---

[28] *$41,305.00 in Currency & Traveler's Checks*, 802 F.2d at 1345.

12

hidden with the cash, the very high quantity of drug residue found on the currency, Petitioner has not met his burden of proof. The facts presented by the State were sufficient to support the forfeiture of the cash. Petitioner's evidence is clearly insufficient to rebut the presumption.

Finally, Petitioner filed a Motion to Amend the Pre-trial Stipulation on the morning of the hearing requesting to be allowed to argue that the initial stop of Petitioner which was illegal and therefore the evidence should be suppressed. I denied the motion finding that the Peitioner had waived his right to challenge the stop because of his guilty plea. Then an hour before the hearing was to begin Petitioner filed a Motion to Reconsider and attached several cases.[29] Due to the fact that the motion had been filed at the last minute and the Court and the State had not had ample time to review or research the issue, I again denied the motion. However, I allowed testimony concerning the stop and ordered briefing on the issues raised.

Petitioner's argument is based on the Fourth Amendment right to be free from illegal searches and seizures. Courts have created a judicial remedy for illegal searches and seizure known as the "Exclusionary" rule. The rule acts as a remedy for a violation of a defendant's right to be free from illegal search and seizure.[30] The rule provides for the exclusion from a trial on criminal charges of any evidence recovered

---

[29] I had no time to review the submitted case law because it came into the Court during my lunch hour and I did not see it until minutes before the hearing was set to begin.

[30] *Jones v. State*, 745 A.2d. 856, 872 (Del. 1999).

or derived from illegal search and seizure. [31] The United States Supreme Court has held that the "prime purpose" of the rule "is to deter future unlawful police conduct."[32] Furthermore, the rule is a "judicially created remedy designed to safeguard Fourth Amendment rights generally though its deterrent effect, rather than a personal constitutional right of the party aggrieved."[33]

Taking Petitioner's argument to its unstated conclusion he is asking this Court to exclude the evidence obtained as a result of the alleged illegal stop and not allow this Court to consider the fact that three pounds of marijuana were found hidden in his vehicle along with $25,640.00 and products designed to conceal the contraband. If the Court were to follow Petitioner's line of reasoning it would yield the absurd result that the Court would be prohibited from considering the fact that Petitioner admitted possessing three pounds of marijuana as evidence by his valid guilty plea. Even if one could exclude evidence that there was marijuana and money found hidden in the vehicle the Court could not also ignore the clear fact of the Petitioner's guilty plea which in and of itself proves he possessed a very large amount of marijuana and his Petition for Return of Property shows the cash was seized.

---

[31] *Jones*, 745 A.2d at 872.

[32] *United States v. Calandra*, 414 U.S. 338, 347, 94 S. Ct. 613, 619 (1974).

[33] *Calandra*, 414 U.S. at 348.

Petitioner suggests that based upon *In re Holloman*[34] that an illegal seizure is sufficient in and of itself to grant the motion for return of property. A careful reading of *Holloman* however does not lead to that result. In *Holloman* the Court clearly declined to address whether or not the judicially created exclusionary rule for criminal cases is applicable in a civil *in rem* forfeiture case finding no Delaware law on point.[35] The Court instead found that the statute provided a separate and organic means of contesting the validity of the seizure and thus excluding the evidence. In *Holloman*, unlike the case at hand, the petitioner had not pled guilty so when the Court determined an illegal search had occurred it could exclude the evidence and return the property. Clearly the forfeiture statute is designed to hinder drug dealers from profits from their illegal activity. To have a holding whereby a defendant could admit his guilt and subsequently have the evidence of that guilt ignored in a forfeiture proceeding is inconsistent with the spirit and intent of the law. Although the Court in *Holloman* did not specifically address the question presented here I conclude that *Holloman* stands solely for the proposition that in instances where a petitioner has not admitted his guilt the evidence of illegal activity may be excluded if the Court finds an illegal search occurred. Such is not the case at hand. Here Petitioner pled guilty to Aggravated Possession.

---

[34] *In re Holloman – $10,000 in U.S. Currency*, 2017 WL 3142498 at *1 (Del. Super. July 24, 2017).

[35] *Id.* at 1. *See* also *United States v. $96,480.00 in U.S. Currency*, 2017 WL 1021292, U.S. Dist. Ct. S.D. Illinois (March 16, 2017) for an in depth discussion of the propriety of the Exclusion rule in forfeiture proceedings.

15

Furthermore, it is difficult to imagine the Court allowing the return of property when there has been an adjudication of guilt. In fact Superior Court Civil Rule 71.3(f)(1) clearly states that:

> A defendant convicted in any criminal proceeding is precluded from later denying the essential allegations of the criminal offense of which the defendant was convicted in any proceeding brought pursuant to this Rule, regardless of the pendency of an appeal for that conviction.

Clearly, Petitioner's guilty plea to the fact that he possessed a large quantity of marijuana can not be challenged. In the case of *One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania*, the United States Supreme Court found that the exclusionary rule could be applied under certain limited circumstances to a forfeiture case. However in that case there was not adjudication of guilt and the remedy was the exclusion of the evidence resulting in a remand of the case.[36] Despite an inordinate amount of time spent researching, I could find no case law supporting the Petitioner' claim that in a forfeiture case where the petitioner was adjudged guilty in the underlying criminal case that an allegedly illegal stop would result in the return of the property.

---

[36] *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 702 (1965), 85 S. Ct. 1246, 1250-1252.

Petitioner and the State argue over the issue of collateral estoppel. The State claims, based on Delaware case law,[37] that Petitioner is collaterally estopped from arguing that the seizure was illegal because he waived his constitutional rights in his guilty plea in his criminal case. Petitioner argues, based on *Haring v. Prosise*[38] that a guilty plea does not collaterally estop a petitioner from pursuing a Section 1983 suit against the police for the violation of his civil rights due to an alleged illegal stop. The United States Supreme Court in *Haring* held that under Virginia law Prosise did not waive his right to challenge the validity of the search and seizure despite his guilty plea. The Court specifically noted that there was no indication that the facts involved in determining whether the search and seizure constituted a 1983 violation had been waived in the criminal matter and that nothing in the record or Virginia case law mentioned it. The case at hand can easily be distinguished from *Haring*. In *Haring* the issue revolved around whether the stop violated *Prosise's* rights created under Section 1983, i.e. that he had been stopped because of his race. In the present case the issue is can the evidence gained as a result of the stop be suppressed after the Petitioner pled guilty, if the stop was subsequently found to be illegal despite Petitioner's waiver of his constitutional rights. As I have previously noted such a result would be absurd since the Court record (Petitioner's Guilty Plea) itself is evidence of Petitioner's possession of an Aggravated amount of marijuana.

---

[37] *See $5,662 U.S. Currency*, 714 A2d at 106; *State v. Machin*, 642 A.2d 1235 (Del. Super. 1993).

[38] 462 U.S. 306 (1983), 103 S. Ct. 2368.

Furthermore, contrary to Petitioner's claim, the case law in Delaware is clear that a guilty plea does in fact waive the right to question the validity of a search and seizure. Chief Justice Veasey in *Hickman v. State*[39] wrote the following:

> 6) Lastly, Hickman claims that he was arrested in violation of his Fourth Amendment right to be free from illegal detention and illegal search and seizure. Despite his contention, Hickman has freely admitted in court that he is guilty of the charge offense. 'A guilty plea constitutes a waiver of important constitutional rights.' *State v. Castro*, Del. Supr. 375 A.2d 444, 449 (1977). If the plea is voluntary and intelligent, it 'waives all defects allegedly occurring before the defendant enters the plea with the exception of subject matter jurisdiction.' *Haskins v. State*, Del. Supr. C.A. No. 188, 1991, at 2-3, Moore, J. (Aug. 19, 1991)(ORDER). The transcript of proceedings indicates that the trial court ensured that Hickman's plea was entered knowingly, intelligently and voluntarily. Accordingly, based upon settled Delaware law, Hickman's complaints regarding illegal detention and illegal search and seizure are deemed waived.
>
> 7) It is manifest on the face of Hickman's opening brief that this appeal is completely without merit and that the issues are clearly controlled by settled principles of Delaware law. SUPR.CT.R. 25(a).[40]

---

[39]  651 A.2d 758 (1994).

[40]  *Id.*, (*see also $5,662 U.S. Currency*, 714 A.2d at 110-11; *Brown*, 721 A.2d at 1265; *Smith v. State*, 841 A.2d 308 (Del. 2004)(TABLE); *Cooper v. State*, 954 A.2d 909 (Del. 2008)(TABLE).

Delaware law is clear that a guilty plea waives constitutional rights including Fourth Amendment rights to be free from illegal search and seizure even when the defendant does not have full knowledge of the relevant circumstances.[41] Consequently, I find that under settled Delaware law, Petitioner waived his right to challenge the validity of the initial stop by virtue of his guilty plea and can not now make such arguments.

Notwithstanding my findings above, I have also reviewed Petitioner's argument claiming Trooper Holl lacked reasonable articulable suspicion to stop Petitioner. Based upon the testimony of Trooper Holl, the Probable Cause Affidavit and my viewing of the dash camera video from Trooper Holl's police car, I conclude that Trooper Holl did in fact have a reasonable articulable suspicion that Petitioner had made an improper lane change and was driving under the influence. As noted earlier, the incident occurred at approximately 3:00 a.m. with little or no traffic or distractions on the road and it was not raining. In the Affidavit of Probable Cause and his direct testimony Trooper Holl stated that he observed Petitioner's vehicle "ping pong" from center white dash line to the side solid line several times. Clearly, Trooper Holl based upon his observations felt that Petitioner had made an illegal lane change and charged him accordingly. The swerving was additionally reasonable evidence that Petitioner may have been driving under the influence. Petition argues that the video does not show his vehicle crossing the lines but clearly that is what Trooper Holl saw as he was driving down the highway at the speed limit. It would

---

[41] *Brown v. State*, 108, A.3d 1201, 1202 (2015)(citations omitted).

19

be unfair to have a "gotcha" moment simply because when viewing a grainy dashboard camera video in a controlled court room it can be alleged that the vehicle did not in fact touch the lines. That is a more proper analysis in a trial on the charge of Illegal Lane Change then in determining reasonable articulable suspicion. In *State v. Mulholland*[42] the trooper testified that he observed a vehicle cross the right fog line twice and weave within its lane of traffic. Under the circumstances the Court found reasonable articulable suspicion to stop the vehicle.[43] Petitioner cites to *West v. State*[44] to argue that mere weaving is insufficient. However the court did not definitely state that. The Court stated "Although weaving *may* be insufficient" (emphasis added). In the case at bar Trooper Holl clearly believed when he stopped Petitioner that he had in fact done more than simply weave but in fact touched and crossed the lines. Additionally, it was late at night and there were no distractions which could have caused the weaving. Consequently, I find Trooper Holl had reasonably articulable suspicion to have stopped Petitioner on suspicion of making an Illegal Lane Change and Driving Under the influence.

## CONCLUSION

After hearing testimony and reviewing the evidence presented, consideration of the supplemental briefing, reviewing both the criminal and civil files, and

---

[42] *State v. Mulholland*, 2013 WL 313642 (Del. Com. Pl. June 14, 2013), (*see also*) *State v. Zanda*, 2016 WL 5660303 (Del. Com. Pl. Aug. 25, 2016).

[43] *Id.* at *3.

[44] *West v. State*, 143 A.3d 712 (2016).

*In the Matter of $25,640.00 in United States Currency*
C.A. No. K17M-07-015 WLW
September 28, 2018

reviewing the applicable authority, it is my finding that State has established probable cause to have initiated the forfeiture proceeding, and that the Petitioner has not met his burden to rebut the presumption in favor of the forfeiture. Therefore, I **DENY** the Petition for Return of Property.

                                                              /s/ Andrea M. Freud
                                                                 Commissioner

AMF/dsc
*Via File & ServeXpress*
oc:    Prothonotary