## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN THE MATTER OF:      :

$13,584.00 in United States Currency    :

Petitioner:    Jeffrey Crippen      :

     :    C.A. No. K17M-08-008 WLW

Submitted: November 29, 2018
Decided: December 28, 2018

## ORDER

Decision After Bench Trial
Upon Petition for Return of Property
*Denied.*

Jeffrey Crippen, *pro se*, Petitioner.

Gregory A. Babowal, Esquire of the Department of Justice, Dover, Delaware; attorney for the State of Delaware.

WITHAM, R.J.

## INTRODUCTION

Petitioner Jeffrey Crippen ("Petitioner") has filed an application for Return of Property pursuant to 16 *Del. C. § 4784* and Superior Court Civil Rule 71.3. The property sought to be returned is U.S. currency amounting to $13,584.00[1] seized by the Dover Police Department following his arrest on felony charges, including drug and weapons related charges, on September 21, 2015. On November 15, 2016, the Petitioner was convicted in this Court of Possession of a Deadly Weapon by a Person Prohibited and Possession of Firearm Ammunition By a Person Prohibited.[2] His current application for return of property was initially referred to the Commissioner pursuant to Superior Court Civil Rule 132(a), but was reassigned to this Court on April 16, 2018. A bench trial was held on November 29, 2018 and the Court reserved its decision.

For the reasons set forth below, the Petitioner's application is DENIED.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 21, 2015, law enforcement officers from the Dover Police Department executed a search warrant at 92 Village Drive in Dover, Delaware, naming the residence and Petitioner as subjects of the search. The search warrant stated the officers were expecting to find drugs on the premises in connection with

---

[1] There appears to be a discrepancy between the Petitioner's application and State's initial motion to dismiss. In his application, the Petitioner sought the return of $13,584. The State stated the amount seized was $13,530.00. At trial, the amount in controversy was stated as the latter, rather than the former.

[2] Judge Clark acquitted the Petitioner of drug related charges.

the Petitioner's alleged drug dealing.

At the trial, the State called Detectives Jordan Miller and Anthony DiGirolomo, and Corporal Joseph Bauer, an officer on the Dover police Department's K-9 unit and handler of "Gunner," Corporal Bauer's drug detection dog. After the Petitioner was detained,[3] Detective Miller and company observed and seized several items of drug paraphernalia and other items related to drug dealing on the structure's lower level that suggested the Petitioner was a drug dealer.[4]

Upon searching the master bedroom, police officers seized several bottles of pills prescribed to the Petitioner, paperwork with the Petitioner's name on it, and a firearm loaded with rounds.[5] Notably, the police also discovered and seized three separate amounts of U.S. currency found within the room. The bundles of currency amounted to $54.00, $3,630.00, and $9,900.00.[6]

---

[3] There is a question of fact regarding whether the Petitioner was attempting to flee from the police. Detective Jordan testified that upon executing the search warrant, the Petitioner was found in the upstairs master bedroom attempting to exit the residence through a window. The Petitioner denied this accusation.

[4] Dover police first observed special locking mechanisms installed on the front and back doors typically used by drug dealers to ward off raids by barricading themselves in the residence. Within the residence, the police also seized drug paraphernalia including a digital scale, plastic "baggies," a can rigged to conceal drugs, and a cooking pot that containing white residue. Detective Miller testified that he suspected the residue was from cooking crack cocaine, but upon cross-examination, Detective Miller testified that the substance in the pot was not analyzed for positive identification.

[5] The Petitioner stated to police that the weapon was present in the home for protection, since the owner reported multiple break-ins and stolen.

[6] A total of $13,584.00 was seized from the bedroom. $54.00 was found on the top of a night stand, in plain view. $3,630.00 was located in the fifth drawer down of the same night stand and

Dover police then searched two vehicles parked at the 92 Village Drive residence.[7] In the Honda Accord ("Accord"), police discovered the Petitioner's probation paperwork, along with ten bags of crack-cocaine, totaling 5.2 grams. As part of their investigation, Dover police determined that the Accord was in the current possession of the Petitioner.[8] Detective DiGirolomo further testified that during questioning, the Petitioner made a statement to him that he believed, based on his twenty-six years of experience, was consistent with drug dealing.[9]

After the seizure of the crack-cocaine, Dover police subjected two of the three bundles of the seized currency ($3,630.00 and $9,900.00 bundles) to a sniff test. The sniff test was overseen by Corporal Bauer and performed by Gunner. After providing testimony on Gunner's training, Corporal Bauer walked the Court through the sniff test process, illustrating his duties and responsibilities as well as Gunner's. Corporal Bauer testified that both sniff tests resulted in two positive hits, one hit per bundle, for controlled substances.

On August 9, 2017, subsequent to his criminal trial and conviction, the Petitioner filed the present return of property application pursuant to Superior Court

---

$9,900.00 was discovered in a dresser.

[7] The vehicles searched were a Honda Accord and a rental Sports Utility Vehicle.

[8] Detective Miller testified on cross-examination that Ms. Natasha Mayben told police that the Honda Accord was the Petitioner's vehicle. At the time of the Petitioner's arrest, he and Ms. Mayben were separated.

[9] Detective DiGirolomo also testified that the Petitioner made a suspicious statement regarding the seized weapon, indicating that it had not been used to kill anyone.

Civil Rule 71.3. The State initially filed a motion to dismiss, arguing the Petitioner's motion was untimely.[10] The Commissioner, after initially granting the State's motion, vacated her decision on December 5, 2017, and indicated that the State failed to provide proper notice to the Petitioner of the forfeitures at his residence of record.[11] The Petitioner's case was then transferred to this Court on April 16, 2018 and on November 29, 2018, a one day bench trial was held, and the Court reserved opinion.

## PARTIES CONTENTIONS

In an attempt to rebut the State's case, the Petitioner offered muddled and conflicting statements accounting how he came to be with the seized currency. However, he has consistently maintained that the seized currency was not related to drug dealing and that the State had not proven the required nexus between the money and drug activity. As the Court understood it, the Petitioner asserted that the seized funds were derived from legitimate sources, including accumulated funds from his 2012 - 2014 employment and two $5000.00 loans, totaling $10,000.00, made to him by Ms. Mayben and Mr. Kenny Thomas. However, the Petitioner did not provide any claim for, nor explanation for, the currency equaling $54.00, other than its inclusion on his initial application.

At trial, the State asserted that the seized funds were subject to 16 *Del. C. §* 4784 forfeiture based on probable cause established by (1) the seized currency being

---

[10] Approximately a year and a half had passed beyond the time allowed under Rule 71.3.

[11] The Commissioner, upon reconsideration, determined that the State had provided notice to the Petitioner at 92 Village Drive, Dover, DE 19904. However, the Petitioner's residence of record was 1163 Adams Court Drive, Dover, DE 19904.

found in *close proximity* to the crack-cocaine and things related to drugs[12] and (2) trace amounts of controlled substances on the seized currency. Additionally, the State argued that the Petitioner did not show, by preponderance of the evidence, that the seized currency was not subject to forfeiture pursuant to the statute.

## LEGAL STANDARD OF REVIEW

In Delaware, civil forfeitures are governed by provisions of 16 *Del. C.* § 4784. Section 4784 was enacted by our Legislature in an attempt to "cripple the trafficking and sale of illegal drugs."[13]

In a civil forfeiture proceeding, "the State has the initial burden of proving probable cause [for the institution of forfeiture] and ... if this is met, the petitioner has the burden of rebutting that presumption of forfeiture."[14] The State is required to demonstrate that there are reasonable grounds for belief of guilt, supported by less than *prima facie* proof but more than mere suspicion, and that the money was furnished or intended to be furnished in exchange for illegal substances, or the profits or proceeds of sales related thereto.[15] The State's burden to demonstrate probable cause applies to each act the police took in gaining possession of the property in

---

[12] The State did not specifically state drug paraphernalia, but the Court reasonably infers the State meant paraphernalia.

[13] *In the Matter of One 1987 Toyota*, 621 A.2d 796, 798 (Del. Super xxx, 1992).

[14] *Brown v. State*, 721 A.2d 1263, 1265 (Del. 1998).

[15] *Matter of $2500.00 U.S. Currency*, 2018 WL 5117805, at * 3 (Del. Super. Oct. 19, 2018). *See also In the Matter of One 1985 Mercedes Benz Auto.*, 644 A.2d 423, 428 (Del. Super. Nov. 19, 1992).

question.[16] The burden then shifts to the petitioner, who must then prove (1) a possessory interest in the property; and that (2) the property was unlawfully seized or was not subject to forfeiture.[17]

## DISCUSSION

As a preliminary matter, the Court would be remiss if it omitted the fact that the Petitioner was acquitted at his criminal trial of all drug related charges. However, an acquittal or dismissal of charges in a criminal proceeding does not preclude civil proceedings pursuant to Superior Court Civil Rule 71.3.[18]

### A. Probable Cause - Close Proximity

The State first argues that the seized currency is subject to forfeiture pursuant to 16 *Del. C. § 4784* because the seized currency was found in *close proximity* to the 5.2 grams of crack-cocaine seized from the Accord parked on the premises,[19] and drug paraphernalia seized within the residence. Here, the Court agrees with the State and finds probable cause demonstrated through *close proximity*.

Section 4784, in part, provides:

> All moneys, negotiable instruments or securities found in *close proximity* to forfeitable controlled substances, or to forfeitable records of the importation, manufacture [,] or distribution of controlled substances are presumed to be

---

[16] *Scott v. State*, 2003 WL 21538033, at *5 (Del. Super. May 16, 2002), citing *Righter v. State*, C.A. No. 95M-11-016, Reynolds, Comm. (Dec. 9, 1996) at 4, *aff'd* Cooch J.

[17] 16 *Del. C. § 4784(j)*.

[18] Super. Ct. C. R. 71.3(f)(2).

[19] 16 *Del. C. § 4784(a)(7)(a)*.

7

forfeitable...[20]

What constitutes *close proximity* was examined in the case of *In re $1,165.00 U.S. Currency,*[21] and the Court quotes therefrom:

'Close Proximity' is a relative term. However, there are many cases construing identical or similar language in various forfeiture statutes in a number of states and localities. Analysis of cases [from other jurisdictions] indicates that 'close proximity' is not usually determined in the abstract. Rather, the courts tend to consider the totality of circumstances in determining whether seized money is in close enough proximity to illegal drugs or paraphernalia to raise an inference that the money was used in, or derived from, drug dealing. However, some courts have held that 'money found on or near a person who is committing, attempting to commit[,] or conspires to commit any of the specifically enumerated [drug] offenses is presumed forfeitable - period.

The 'close proximity' provision applying to money in the Act does not appear to have been previously construed by this Court. However, in construing other provisions of the statute, this Court has utilized a probable cause approach..... In applying the test, this Court took into account the totality of the circumstances, .... Therefore, in determining whether the $1,165.00 USC in this

---

[20] *Id.* In *Brown*, our Supreme Court interpreted section 4784's statutory language and stated "[w]ith regard to money, the Forfeiture Act states that "all moneys...found in close proximity to forfeitable controlled substances...are presumed to be forfeitable." 721 A.2d at 1265 (emphasis added).

[21] C.A. No. 95M-05-009-RSG, Reynolds, Commissioner (Del. Super. Mar. 6, 1997) at 11-14.

case was sufficiently in 'close proximity' to the marijuana in the vehicle trunk to raise a presumption that the money is forfeitable, it is necessary to look to the totality of the circumstances. [Citations and footnotes omitted.]

Assuming arguendo, that the Petitioner has standing in this case, a review of the evidence leads the Court to find that the State has demonstrated probable cause to seize currency based on *close proximity*.

In a survey of Delaware law, the Court found little instruction. Virtually all Delaware cases that demonstrated probable cause through *close proximity* shared common characteristics in terms of the drugs and seized currency being seized from the same location, such as a house, automobile, or person.

However, the lack of those characteristics in the present case is not fatal to the State. First, while the bundles of money were found within the 92 Village Drive residence, the drugs were found in the Accord parked *directly in front of the residence*. The Court reasonably inferred, based on the urban setting of the residence, that 92 Village Drive has a driveway or parking area that is within the curtilage of the residence.[22]

In this case, the State executed a *valid search warrant* that identified 92 Village Drive as the location for the search. Detective Miller testified that drug dealers tend to have significant amounts of cash on hand in their residence, which is exactly what

---

[22] In *Florida v. Jardines*, 569 U.S. 1, 6 (2013) the Court, quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984), the Court defined curtilage as the area "immediately surrounding and associated with the home" and considered the curtilage to be "part of the home itself for Fourth Amendment purposes."

the police found at the residence. Dover police, through a diligent investigation, connected the Accord to the Petitioner. And finally, Detective DiGirolomo inferred, based on twenty-six years of experience, that the Petitioner's own statement to him regarding his activities, was consistent with drug dealing.

After assessing the evidence, the Court finds that it was clear that the crack-cocaine seized from the Accord was in *close proximity* to the currency seized from within the residence at 92 Village Drive. Thus, the presumption of forfeiture pursuant to section 4784 applies.[23]

## B. Probable Cause Established by Trace Elements of Illegal Drugs

Turning to the State's second argument, the Court, because it found probable cause through close proximity does not have to consider this argument. However, assuming arguendo that the Court had found probable cause was not demonstrated through close proximity, the Court would have determined that the State has demonstrated probable cause based on trace elements of illegal drugs present on the currency pursuant to 16 *Del. C. § 4784*.

Pursuant to Section 4784:

All moneys, negotiable instruments or securities found to have *trace amounts of controlled substances on them are presumed to be forfeitable* under this paragraph. The burden of proof is upon the claimant of the property to rebut this presumption.[24]

---

[23] During trial, the State focused part of its case on the drug paraphernalia seized from the 92 Village Drive residence. However, pursuant to section 4784(a)(7)a, drug paraphernalia is not listed as a qualifying item under the *close proximity* prong of the statute.

[24] 16 *Del. C. § 4784(a)(7)(b)*.

At trial, the State presented evidence of two positive hits by Gunner, the drug detection dog, on the bundles totaling $9,900.00 and 3,630.00. The dog sniff test evidence is accepted in Delaware and the Third Circuit as reliable, if the appropriate testimony concerning the training and experience of the dog is introduced at trial.[25]

In this case, the Court finds that the State has also demonstrated probable cause to seize the currency by virtue of the positive hits on the money recorded by Gunner. Corporal Bauer testified that Gunner would not record a positive hit on most currency that had not been in the presence of drugs for a reasonable period of time, establishing the parameters of Gunner's capabilities. The State produced evidence that the seized currency was placed in two previously empty rooms that Corporal Bauer had personally cleared prior to the sniff test and the resulting two positive hits, one positive hit per bundle, detected by Gunner indicated trace elements of a controlled substance.[26]

Gunner's sufficient training and experience, accompanied by Corporal Bauer's testimony, meets the requirements found in Delaware and the Third Circuit. The K-9

---

[25] *See In the Matter of $1,100.00 in U.S. Currency*, C.A. No. 08M-03-004 AMF, Freud, Commissioner (Del. Super. Apr. 30, 2009) at 5; *See also United States v. Carr*, 25 F.3d 1194, 1203 (3d Cir. 1994)(accepting proof of positive hit by properly trained dog as evidence tending to support conviction); *United States v. Massac*, 867 F.2d 174, 176 (3d Cir. 1989)(concluding that positive dog hit on defendant's luggage gave police probable cause to arrest, relying in part on court's conclusion that dog "met the training and reliability requirements").

[26] The Court notes however, that the State never established that the trace elements were from crack-cocaine. However, this is not fatal to the State's case because (1) the State has demonstrated probable cause previously through close proximity and (2) the plain language of the statute states only that trace elements of a controlled substance must be present for the presumption to apply. It does not state that it has to be a specific controlled substance.

training and experience was uncontradicted at trial and the Court finds the training and experience realiable based on the testimony at trial. Thus, the Court finds that the two of bundles of seized currency that tested positive for trace amounts of controlled substances are subject to the presumption pursuant to section 4784(a)(7)(b).[27]

## C. The Petitioner has Failed to Rebut the Presumption of Forfeiture

Now that the State has established proximate cause for the seizure of the currency, the burden shifts to the Petitioner to rebut the established presumption of forfeiture. Based on the testimony of all witnesses, including the Petitioner, the Court finds that he has failed to rebut the presumption of forfeiture pursuant to 16 *Del. C.* *§* 7484.

*i. The Petitioner failed to demonstrate possessory interest in $10,054.00 of the $13,584.00 in seized currency.*

After considering the Petitioner's presentation to the Court, the Court finds that he only has a possessory interest, i.e. standing, in $3,530.00 of the $13,584.00 that was seized by Dover Police on September 21, 2015.[28]

The Court can first easily dispense with the $54.00 seized bundle. In this case,

---

[27] The $54.00 was not found to contain trace elements of a controlled substance, and thus, the presumption pursuant to section 4784(a)(7)(b) does not apply. However, the $54.00 is still subject to the presumption pursuant to section 4784(a)(7)(a).

[28] At trial, the Petitioner presented his case in terms of the precise amounts in two of the three bundles of money found. Based on his testimony, however, it is impossible to do so for the purposes of this analysis and while the money does not add up as he argued at trial, the Court has ensured that the calculations are correct and proper.

and despite the $54.00 bundle being included in his application, the Petitioner has made no further assertion, nor presented any evidence or testimony, that demonstrated ownership of that seized currency. The Petitioner had an opportunity to support his claim to the $54.00 at trial, but chose not to. Accordingly, the Court is required by law to find that the Petitioner has not established a possessory interest to challenge the presumption of forfeiture regarding the seized bundle of $54.00. The amount is subject to forfeiture to the State pursuant to section 4784.

The Court now must address the remaining seized currency totaling $13,530.00. In this case, the Petitioner has further failed to demonstrate a possessory interest in $10,000.00 of that remaining total.

In his petition filed on August 9, 2017, the Petitioner attested to the Court that all confiscated funds were received by him on September 20, 2015, one day before the seizures took place.[29] At trial, however, he testified that he had acquired portions of the seized money as early as 2012, through his efforts in the workplace, and through personal loans.

One of those personal loans for $5,000.00 was allegedly made to the Petitioner by Mr. Kenny Thomas. At trial, however, the Petitioner provided no evidence, either through testimony or affidavit, that the loan was ever made. The Petitioner also failed to produce documentary evidence of the formation of his alleged business, which was the Petitioner's stated purpose for the loan from Mr. Thomas.

The second personal loan was allegedly made to the Petitioner by Ms. Mayben

---

[29] The Petitioner's testimony contradicted his initial application to the Court.

in the amount of $5000.00. Unfortunately, the Petitioner again failed to produce any relevant evidence supporting his claim that the loan was ever made.[30]

The one submission regarding any loan from Ms. Mayben was a computer printout stating that she had borrowed $5,950.00 from her Thrift Savings Plan (TSP) in June of 2013. The Court fails to comprehend how this document supports the Petitioner's case as the document is only proof that Ms. Mayben was loaned funds from her TSP account and not that she loaned the Petitioner $5,000.00.

Additionally, the Petitioner testified that the purpose for this loan was to start a landscaping business and that the business license had been paid for in cash. Yet as previously stated above, the Petitioner provided no evidence or witnesses to support this claim. The Court finds it incredible that Ms. Mayben allegedly loaned the Petitioner 5,000.00 in 2013, but then two years later, the money would be part of a collection of funds stored in a home that had been broken into multiple times, instead of a secure location like a bank.

Thus, based on the record presented, the Court finds no evidence that the Petitioner has a possessory interest in $10,000.00 of the remaining $13,530.00.

*ii. The Petitioner has demonstrated a possessory interest in $3,530.00.*

Regarding the remaining seized currency, $3,530.00, the Court finds that the Petitioner has demonstrated a possessory interest. At trial, the Petitioner presented

---

[30] The one affidavit that the Petitioner did provide from Ms. Mayben was ruled inadmissible by the Court, but allowed as a Court Exhibit. Ms. Mayben was unavailable to appear as a witness for the Petitioner.

a 2014 W-2 as evidence,[31] albeit minimal evidence, of his earnings accounting for $3,530.00 of the seized currency. Therefore, the Court finds that the Petitioner has a sufficient possessory interest in $3,530.00 of the total amount claimed.

> *iii. The Petitioner failed to show that the seized currency he had a possessory interest in was not subject to forfeiture pursuant to section 4784.*

With respect to the second prong of the Petitioner's burden, the only possible amount that the Petition could rebut forfeiture for is $3,530.00. The Court finds that the Petitioner has not met his burden of persuasion that the currency is not subject to forfeiture. The Petitioner, by virtue of this Court finding that he had a possessory interest regarding the remaining $3,530.00, was required to "show by a preponderance of the evidence an alternate source for the funds," which requires more than just a possibility of a legitimate source for the cash.[32]

In this case, the Petitioner: (1) did not provide sufficient evidence that the cash was related to legitimate non-criminal sources; (2) provided no proof of his employment from 2012 - 2013; and (3) provided incomplete proof of ownership of the funds. The evidence presented simply does not support the Petitioner's claim that his possessory interest is in seized currency not associated with drug dealing.

Under the circumstances and the evidence that was presented, it is more likely than not that the cash was part of drug dealing activities and the Petitioner has not

---

[31] At trial, the Petitioner did not submit W-2's covering the years 2012-2013.

[32] *Matter of $2,500.00 U.S. Currency*, 2018 WL 5117805, at *3, citing *In the Matter of $5,662 United States Currency*, 714 A.2d 106, 113 (Del. Super. Mar. 10, 1998).

successfully rebutted the presumption that this amount of seized currency is subject to forfeiture pursuant to section 4784. Thus, the funds are forfeited to the State.

## CONCLUSION

After hearing testimony and reviewing the applicable authority, the Court finds that the State has established probable cause resulting in the seizure of $13,584.00, and that the Petitioner has not met his burden to rebut the presumption in favor of forfeiture. Therefore, the Petition for Return of Property is **DENIED**.

IT IS SO ORDERED.

/s/ William L. Witham, Jr.
Resident Judge

WLW/dmh
oc: Prothonotary
cc: Mr. Jeffrey Crippen, *pro se*
Gregory A. Babowal, Esquire

16