# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,     )
    )
v.     )      Cr. ID. No. N17M-10-101 ALR
    )
CAMI WORLEY     )
    )
    Defendant.     )

## Upon Petition for Return of Property

## DENIED

Cami Worley, *Pro Se*

Danielle Brennan, Esquire, Deputy Attorney General, Wilmington, Delaware for the State of Delaware

Mayer, Commissioner

## FACTUAL AND PROCEDURAL BACKGROUND

On October 11, 2017, Cami Worley ("Petitioner"), filed a Petition for Return of Property pursuant to 16 Del. C. §4784(j) and Superior Court Civil Rule 71.3, seeking the return of $2,500.00 cash. The cash was confiscated by the State of Delaware pursuant to the drug asset forfeiture statute or 16 Del. C. Section 4784. According to the Petition, the funds represented $1,800.00 acquired through Petitioner's landlord and $900.00 from the Red Cross, as well as gift cards and donations.[1] A non-jury trial was held on November 8, 2018. The parties were given an opportunity to supplement the record and briefing is now complete.

The events leading up to the seizure can be summarized as follows. On September 21, 2017, Petitioner rented a Dodge Charger and asked a friend's sister, Lauren Wesley ("Wesley"), to help her with some errands. Wesley picked up Petitioner's husband and friends to take them to Maryland.[2] Wilmington Police conducted a stop of the car because the license plate light was out.[3] At the time of

---

[1]   Petitioner also testified she received donations including "baskets of money." November 8, 2018 Trial Transcript at 27 (hereinafter Tr. at ___). Although Petitioner testified that the seized funds were an "abundance of moneys" that she had, the Petition, testimony and exhibits all focused around the funds from the landlord and Red Cross.

[2]   Others may have been in the car as well (*See* Tr. at 39-40), but that is not relevant to the final determination in this matter.

[3]   Tr. at 52.

2

the stop, Wesley was a passenger in the backseat and according to Petitioner, Wesley called her from the car. Petitioner claims she then told Wesley that she had money in the glove compartment and Petitioner asked Wesley to hold it for her.[4] The State's witness testified that they could see a lot of moving around between the driver/front seat and someone turning around and reaching to the rear passenger-side occupant (Wesley).[5]

The windows of the car were open and the police detected a strong smell of marijuana coming from the vehicle.[6] The occupants were asked to exit the vehicle and the police conducted a search. The police found what was believed to be marijuana residue (untested) in the back seat on the floor near Wesley, but no other drugs.[7] The police then searched Wesley's purse and found $2,500 in cash folded-over and rubber-banded (the "Seized Funds").[8]

The Seized Funds consisted of one hundred (100) $20.00 bills, two (2) $50.00 bills and four (4) $100.00 bills, which the officer testified is consistent with drug

---

[4] Tr. at 19-20.

[5] Tr. at 53.

[6] Tr. at 54.

[7] Tr. at 55-56.

[8] Tr. at 56.

dealing.[9] The police questioned Wesley about the funds and although she claimed the money belonged to her, she could not accurately identify the amount of mooney.[10] Wesley then filled out a Notice of Forfeiture Form claiming ownership of the funds.[11]

Later, the State sent the Seized Funds to the Delaware National Guard for testing. According to the State's witness, the funds were run through the normal ION-Scan procedure. The machine is set to alarm if drug residue is detected that has at least two times higher than the average in digit units.[12] The current average is 150 digit units and the machine will signal if residue is found in excess of 300 digit units.[13] The Seized Funds tested at 360 digit units for cocaine, or 60 digit units above the threshold.[14] The average positive screen for cocaine is usually around 500 digit units.[15]

---

[9] Tr. at 47.

[10] Tr. at 57.

[11] State's Exhibit 1.

[12] Tr. at 87-88.

[13] Tr. at 88-89.

[14] Tr. at 102.

[15] Tr. at 105.

4

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A few important facts are not in dispute.[16] First, Petitioner's residence was destroyed by a fire that occurred on September 7, 2017. As a result, her landlord refunded her security deposit and rent for a total of $1,800.00. Petitioner's testimony and documentation in support were not contradicted. Petitioner testified she received $1,800.00 in all hundreds from her landlord on or about September 14, 2017.[17] Petitioner also testified that she deposited that money into her bank account.[18] What happened to those funds is in dispute.

Second, Petitioner owned several vehicles, and was also the named party on the rental agreement for the Dodge Charger that was stopped by the police. The parties dispute why Petitioner had a need for the rental car, but do not disagree that it was in her name. Petitioner clarified in her response that the rental car cost was a total of $484.59 a month, not for a single day, which is more likely to be true. Petitioner also explained that despite owning several vehicles, one was in the repair shop, one was not properly tagged, and one was on loan to a family member.

---

[16] Tr. at 23-24.

[17] Tr. at 21, 24-25.

[18] Tr. at 40.

Third, Petitioner received $900.00 from the Red Cross on or about September 18, 2017 (and prior to September 23, 2017).[19] Petitioner claims she withdrew the entire $900.00 from a card at a Wawa.[20] However, the State's witness claims it was a check from the Red Cross.[21]

According to Petitioner's Wells Fargo bank records, she deposited $2,500.00 on September 18, 2017.[22] The next day, she made a withdrawal of $1,000.00. The State argues that the bank records do not reflect other withdrawals to support Petitioner's testimony that she deposited the landlord and Red Cross money, withdrew it, and placed it in the glove compartment of the rental vehicle.[23]

The parties also agree that Wesley executed the Notification of Forfeiture wherein she represents that "the property described above was seized from me. I am the owner of the property." Despite this, Petitioner did not produce Ms. Wesley as a witness at the time of the trial.

In a civil forfeiture matter, the burden is upon the State to show probable cause that the property seized is subject to forfeiture under 16 Del. C. §4784. "The State

---

[19]  Tr. at 25-27.

[20]  Tr. at 22.

[21]  Tr. at 115.

[22]  Exhibit # 3.

[23]  Tr. at 125.

is required to demonstrate that there are reasonable grounds for belief of guilt, supported by less than prima facie proof but more than mere suspicion, and that the money was furnished or intended to be furnished in exchange for illegal substances, or the profits or proceeds of sales related thereto."[24] The bases of the State's claim in this matter is that the Seized Funds were drug dealing proceedings, found in close proximity to illegal drugs or trace amounts of controlled substances were found on the currency. To rebut the State's case, the Petitioner must prove by a preponderance of the evidence that she had a possessory interest in the property and that the Seized Funds were not subject to forfeiture.[25]

Of note, no criminal charges were initiated as a result of the stop.[26] It is true that "an acquittal or dismissal of charges in a criminal proceeding does not preclude civil proceedings pursuant to Superior Court Civil Rule 71.3"[27] but this does not end the analysis.

The State asserted several bases for possible forfeiture of the Seized Funds. Pursuant to the State's post-trial brief, the State first moves for forfeiture pursuant

---

[24] *In the Matter of $13,584 in United States Currency Petitioner: Jeffrey Crippen,* 2018 WL 6839753, at *6 (Del. Super. Dec. 28, 2018), citing *Matter of $2,500.00 U.S. Currency,* 2018 WL 5117805, at *3 (Del. Super. Oct. 19, 2018).

[25] *Scott v. State,* 2003 WL 21538033, at *5 (Del. Super. May 16, 2002).

[26] Tr. at 59

[27] *In the Matter of $13,584.00,* at *7.

7

to 16 <u>Del</u>. <u>C</u>. §4784(a)(7) because the money was tendered for the exchange of controlled substances. At trial, the State's argument was focused on the denominations of money found.[28] I find that the denominations alone is insufficient evidence in the record to support the State's theory that the Seized Funds were tendered in exchange for controlled substances.

The State's second argument espoused at trial, is that the Seized Funds were found in "close proximity" to marijuana because the car smelled of marijuana and there was some residue throughout the backseat where Wesley was sitting. The statute though requires the State to prove that the Seized Funds were:

> Found in close proximity to forfeitable controlled substances, or to forfeitable records of the importation, manufacture, or distribution of controlled substances...[29]

The smell of marijuana and possible residue is insufficient to establish reasonable grounds for belief that a forfeitable controlled substance was present.[30]

---

[28] Tr. at 133-134.

[29] 16 <u>Del</u>. <u>C</u>. §4784(a)(7)(a). *See also Brown v. State*, 721 A.2d 1263, 1265 (Del. 1998) (examining close proximity requirement).

[30] *See e.g. In re $3,3032.00 US Currency*, 1996 WL 769202 (Del. Super. Dec. 19, 1996) ("Forfeiture of citizens' property requires more than suspicious circumstances and innuendo.")

The State's third argument is that the Seized Funds are forfeitable because pursuant to Section 4784(a)(7)(b):

> All moneys, negotiable instruments or securities found to have trace amounts of controlled substances on them are presumed to be forfeitable under this paragraph...

The statute does not specify the minimum amount required and simply states "trace" amounts of a controlled substance is sufficient.[31]  Further, the State need not establish a specific illegal drug transaction, but rather, need only demonstrate reasonable grounds to believe that a substantial connection exists between the seized cash and drug dealing.[32]  Once the State meets its burden, the petitioner must establish more than just a possibility of an alternative source for the money seized.[33]

The State has met its burden of demonstrating that the Seized Funds are presumed forfeitable because the cash was found to have trace amounts of cocaine, a controlled substance, on it.  Although the digit units were barely above the

---

[31]  In fact, relevant legal authority has found a positive hit by a trained dog as sufficient evidence, without chemical testing. *In the matter of $1,100.00 in U.S. Currency*, at *5 (Del. Super. Apr. 30, 2009); *United States v. Carr*, 25 F.3d 1194, 1203 (3d Cir. 1994); *United States v. Massac*, 867 F.2d 174, 176 (3d Cir. 1989).

[32]  *In re: Matter of $5,662 U.S. Currency*, 714 A.2d 106, 113 (Del. Super. 1998).

[33]  *Id.*

threshold for alarm, the Seized Funds tested positive for cocaine at a rate higher than the average.

In determining whether Petitioner has rebutted the presumption, the Court looks to the totality of the record and weighs the credibility of the witnesses.[34] In October of 2017, Petitioner filed an Affidavit in Support of Application to Proceed in forma Pauperis. Through that application, she affirmed, under oath, that she was unable to pay the $75.00 filing fee because she was rebuilding her life from the fire. The only vehicle she listed in the application was a 2000 VW Beetle. Petitioner made no reference to the other three (3) vehicles she owned.[35]

In addition, in response to a question requesting information about any cash held – whether or not in a bank – Petitioner responded only by identifying $56.00 in her checking account at Wells Fargo Bank. However, at the time of the hearing, Petitioner represented that she frequently carries around large sums of cash, she is "not poor," she has worked regularly, and she is the beneficiary of a large property valued in the millions.[36] Petitioner claims she is the type of person that carries large

---

[34] *Liberto v. Gilbert*, 2015 WL 9048087, at * 2 (Del. Super. Dec. 4, 2015).

[35] Tr. at 32. Petitioner mis-informed the State in response to Interrogatory questions as well.

[36] Tr. at 18-19.

sums of money on her regularly.[37] In fact, she indicated that she usually carries "a thousand dollars or more on me at a time" unless she is in Wilmington, and then she limits it to "five or six hundred dollars."[38] Petitioner also testified she frequently spends large sums of money such as $200.00 at True Religion, $300.00 on sneakers, and has funds in "abundance."[39] According to Petitioner, she "always [has] money" and "[t]here's never a time that [she has] not had money…"[40]

I find that Petitioner's testimony directly contradicts her Petition and Application to the Court. The record reflects that Petitioner owned four (4) vehicles, had an abundance of cash on her person and other significant assets. At the same time, Petitioner filed several documents with the Court (the Application) or submitted to State's counsel (interrogatories), under oath, that were evasive and untruthful when addressing the issues of cash and other assets.

Coupled with the above, I have considered that the record supports that the landlord and Red Cross funds were deposited, but there is no record these funds were withdrawn and/or why they would have been saved and placed in the car. Petitioner

---

[37] Tr. at 18.

[38] Tr. at 28.

[39] Tr. at 28.

[40] Tr. at 28-29.

11

testified she has had past negative experiences with the City of Wilmington and has made adjustments in how much cash she carries when there to only a few hundred instead of a few thousand. It is therefore entirely inconsistent with her testimony for the Court to accept that Petitioner would have placed thousands in cash in a rental car outside of her control, and allow a friend's sister to transport Petitioner's husband through the City of Wilmington.[41] Finally, the denominations of the cash and the manner in which it was folded/rubber banded is inconsistent with the denominations of cash provided by the landlord. Although Petitioner provided some evidence to support an influx of cash around the time of the seizure, the facts and circumstances do not support her positon. Having considered the totality of the circumstances, testimony of all witnesses, including the Petitioner, and all exhibits presented by the parties, the Court finds that the Petitioner has failed to rebut the presumption of forfeiture.

---

[41] Although the rental car was in Petitioner's name, the Seized Funds were found in Wesley's purse when Petitioner was not present. Therefore, I also find that the facts cast serious doubt as to whether Petitioner had a valid interest in the monies seized.

For the foregoing reasons, the Petition for Return of Property is **DENIED** and the $2,500.00 in cash seized on September 21, 2017 is hereby forfeited to the State of Delaware.

**IT IS SO ORDERED** this 11th day of January, 2019.

Commissioner Katharine L. Mayer

cc. Prothonotary
    Danielle Brennan, DAG
    Cami Worley, *Pro Se*